ALBANY,<br>Jan. 1836.<br><br>The People<br>v. ,<br>Hennessey.

---

## THE PEOPLE vs. HENNESSEY.

An indictment for *embezzlement* lies against a clerk or servant for converting to his own use the money, goods, &c. of *his master or employer,* as well as for converting to his own use the money, goods, &c. *of any other person,* which shall have come into his possession or under his care by virtue of his employment: the words *any other person,* in the statute, mean *any person other than he who is guilty of the embezzlement.*

The confessions of a party, not made in open court or on examination before a magistrate, but to an individual, uncorroborated by circumstances, and without proof *aliunde* that a crime has been committed, will not justify a conviction.

THE prisoner was indicted for *embezzling* money to the amount of $350, which had been collected and received by him, and which had come into his possession as the *servant* of one

ALBANY,
Jan. 1836.

The People
v.
Hennessey.

Joseph Fisk, the money being charged to be the *property of his master*. On the trial of the prisoner, at the Albany oyer and terminer, Fisk testified that he was *marshal* of the corporation of the city of Albany, and employed the prisoner to collect assessments upon property in the city; that he charged the prisoner with having omitted to pay over moneys collected by him, and he admitted the fact, and furnished the witness with a statement, in his own hand-writing, showing the amount of $260,49, collected and not paid over, and containing the names of the persons from whom received, which was read in evidence. An assessment against certain individuals for $109,14, with a receipt thereto in the hand writing of the prisoner, was also read in evidence. The counsel for the prisoner moved for his discharge, on the grouds: 1. That the offence created by the statute is embezzling property *not the property of the master*, but *of any other person* which may have come to the possession of the servant; 2. That the prisoner was the servant of Fisk in his *official character* as marshal of the city, and not the servant of a *private person*, within the meaning of the statute; 3. That the public prosecutor had failed in sustaining the prosecution, in omitting to prove the particular money received by the prisoner—i. e. whether in specie or in bank bills; and 4. That there could be no conviction, as the *corpus delicti* had not been proved independent of the prisoner's confessions, which alone were not evidence that a crime had been committed. The court overruled the objections, and the jury found the prisoner guilty. The case, with a bill of exceptions, was brought into this court by *certiorari*.

*S. Stevens*, for the prisoner, insisted that by the statute a clerk or servant is not punishable for embezzling *the property of his master*. The crime created by it is that of a clerk or servant of a private person, &c. embezzling or converting to his own use, without the assent of his master, money, &c. *belonging to any other person*, which shall have come into his possession, &c. 2 *R. S.* 678, §59. The section was probably intended to embrace the provisions of two English statutes on this subject—one declaring it felony for a servant to embezzle the *property of his master*, and the other creating the

same offence for the embezzlement of the *property of any oth-er person* coming to his possession, &c., and in concocting it an hiatus took place; but be the cause of its phraseology what it might, the prisoner, he insisted, was not within the terms of the statute, and therefore was entitled to his discharge. He also insisted that the indictment was bad in not setting forth and specifying the kind of money collected and received by the prisoner : that is, whether in specie or bank bills—and if in specie, the kind of coins ; that the charge should be as particular and specific as in an indictment for larceny in stealing money. So were all the forms previous to the statute 7 & 8 *Geo. 4th, ch.* 29,§ 47, 48, which dispenses with such particularity; but we have no such statute. He cited *Archbold's Cr. Pl.* 120, *Russll on Crimes*, 1236, 1244, *and Stark. Cr. Pl.* 221. At all events, such proof should have been given on the trial. *Rex* v. *Furneaux, Russell & Ryan*, 335, *and Rex* v. *Bernald, id.* 404. He also insisted that, it appearing that the prisoner was the servant of Fisk, in his *official character* as marshal, and aided in the performance of the marshal's duties, was not, within the meaning of the statute, a servant of a *private person;* that the deputy of a sheriff might, with the same propriety, be deemed a servant ; and finally he contended that there could be no conviction for a criminal offence, without proof of the *corpus delicti*—that a crime was actually committed, and that such fact could not be established by the confessions of the party accused. Here was no proof independent of the confessions of the prisoner, for the receipt and statement read in evidence added nothing to the confessions.

*J. L. Tillinghast*, for the people, insisted that the words "any other person " in the statute must be construed to mean any other person than the individual charged with the offence, or the principal object of the statute would be defeated, the protection of the property of masters against embezzlement by their servants. He referred to the statute, 1 *R. L.* 112, and 412, as it existed previous to the revision, to the act of 1819, page 314, and to the several sections of the revised statutes on this subject. 2 *R. S.* 678, § 59, 60, 63, 65. In answer to the objection to the indictment for omitting to particularize the money which came to the possession of the prisoner, he

said, that such objection would have been tenable under the act of 1788, but that the language of the revised statutes was so broad and comprehensive as to render the specifications required by the counsel unnecessary. The prisoner, he contended, must be considered as the servant of Fisk, as a private person, as it had not been shown that the marshal had authority to appoint a deputy. In reference to the last point raised on the other side, he said that it was the uniform practice of our criminal courts to convict on confessions alone; here, however, he contended the *corpus delicti* was proved by evidence independent of the confessions of the prisoner, and that in writing; and that a confession is sufficient evidence to warrant a conviction, although there is no positive proof *aliunde* that an offence has been committed. *Russell and Ryan*, 463, 508. *Archbold's Cr. Pl.* 80, 81.

*By the Court*, SAVAGE, Ch. J. In this case two questions arise : 1. Whether the indictment charges an offence under the statute ; 2. Whether the conviction was proper ? The statute is in substance as follows : If any clerk or servant of any private person or corporation shall embezzle or convert to his own use, without the assent of his master or employer, any money, goods, rights in action, or other valuable security or effects whatever, *belonging to any other person*, which shall have come into his possession, by virtue of such employment, he shall, upon conviction, be punished,&c. The defendant's counsel insists, that to bring the offence within the statute, the property embezzled should belong to some person other than the master; and he contends that such is the true construction of the statute ; that the words " belonging to any other person," mean belonging to any person other than the master, or employer. To my mind it is very clear that they mean, belonging to any person other than the servant who is guilty of the embezzlement. The idea is, that he shall be punished for unlawfully converting or appropriating to his own use any money, goods, &c. of any person other than his own, which shall come to his hands by reason of the relation in which he stands as clerk or servant to his employer. Any other construction would impute to the legislature an absurdi-

ty. The very term " embezzlement" is peculiarly applicable
to a fraudulent appropriation made by a servant of goods en-
trusted to him by his master. By the common law it was not
larceny in a servant fraudulently to dispose of his master's
goods committed to him to keep, but only a breach of trust.
The statute 21 *H*. 8, *ch.* 7, recites that it was doubtful wheth-
er such an offence was felony, and it enacts that servants be-
ing over eighteen years of age, and not apprentices, to whom
caskets, jewels, money, goods or chattels of their masters shall
be delivered to keep, and who shall embezzle the same, or con-
vert the same to their own use, with intent to steal, shall be
adjudged guilty of felony, and punished accordingly. This
statute, in terms, made the offence of embezzling property
delivered by the *master*, felony; the property of *others* was not
expressly embraced, and it was held, in *Bazeley's case, 2 East's
P. C.*, 571, that where a banker's clerk received money and
notes paid in by a customer, and embezzled the notes, that the
offence was not larceny, but only a breach of trust. This de-
cision produced the statute 39 *Geo.* 3, *ch.* 85, which is entitled
"an act to protect masters against embezzlement by their
clerks or servants." It recites, that whereas bankers, merch-
ants and others are obliged to entrust their clerks and servants
with receiving, paying, negotiating, exchanging or transferring
money, goods, bonds, bills, notes, banker's drafts, and other
valuable effects and securities; and whereas doubts have been
entertained whether the embezzling of the sam amounts to
felony, it enacts that the person so embezzling the same shall
be deemed to have feloniously stolen the same from his mas-
ter or employer, for whose use, or on whose account the same
was delivered to him, or possession taken by him. The stat-
ute 21 *Henry* 8, *ch.* 7, was substantially enacted in this state,
in 1788, 1 *R. L.* 112, which was confined to the embezzle-
ment of money, goods or chattels delivered to be safely kept.
The act of February 25, 1813, extends the offence to the
embezzling of not only money, goods and chattles, but also
bills of exchange, bonds orders, warrants, bills or promissory
notes for payment of money, or any public securities. The
act of April 13, 1819, declares that officers, agents, clerks
or servants of banks, or any person employed in such capaci-

ty, who shall embezzle any money, goods, bonds, bills, checks, notes, banker's drafts, or other valuable security or effects whatsoever, belonging to such bank, or to any person having lodged the same with such bank or such officer or servant, shall be guilty of felony, &c. The revised statutes, 2 *R. S.* 678,§ 59, were no doubt intended to embrace, and do embrace the pith and substance of both our previous statutes, and also of the *39th Geo. 3. ch.* 85. Can it be believed that when the whole course of legislation on this subject has been aimed at the protection of the master or employer against the frauds of those necessarily entrusted with their property, the legislature, when *revising and embodying previous statutes into a more simple form of enactment,* should lose sight of the great object in view, and protect every person except those most liable to be defrauded ? The 60th section shows that it was the intention of the legislature to go farther in favour of the master or employer than of other persons, by making it an offence to embezzle any instrument executed by such master, but not yet issued ; a note, for instance, drawn and signed for the purpose of being discounted, or delivered in the course of business, but not actually put in circulation. It is very clear, therefore, that the offence consists in embezzling the money, goods, rights in action or other valuable security or effects whatever, belonging to *any person other than the person guilty of the embezzlement,*which shall have come to his possession, or under his care, by virtue of his employment as clerk or servant of a private person ; or as officer, agent, clerk or servant of any incorporated company.

The next point arising upon the bill of exceptions is whether the defendant was properly convicted upon his own confessions made to his master, uncoroborated by any other fact or circumstance ? Generally speaking, the admission of a fact renders it unnecessary to prove it. Of admissions or confessions there are several kinds : 1. A confession in open court of the prisoner's guilt, which is conclusive, and renders any proof unnecessary ; 2. The next highest kind of confession is that which is *made before a magistrate ;* 3. The lowest is that which is made to any other person. All these confessions, if voluntary, are competent evidence, and it is said, by most

writers on the law of evidence, that a confession out of court is sufficient evidence to warrant a conviction, although there is no positive proof *aliunde* that the offence was committed. 1 *Macnally*, 51. 1 *Phil. Ev.* 86. *Archb. Cr. Pl.* 55. It is stated by Mr. *East*, in his Crown Law, 1 *East's P. C.* 133, that in the case of *Francis Francia*, in 1716, it was agreed, at a conference of the judges, preparatory to his trial, among other things, that in all cases the confession of a criminal may be given in evidence against him ; and that in cases of treason, if such confession be proved by two witnesses, it is proper evidence to be left to the jury. Mr. Justice *Foster* thought this decision wrong, though he admitted it might be too late to controvert the authority of it. He insists that the rule should never be carried further than to a confession made during the solemnity of an examination before a magistrate. For he observes, hasty confessions made to persons having no authority to examine, are the weakest and most suspicious of all evidence ; words are often misreported, and extremely liable to misconstruction, and withal, he says, this evidence is not, in the ordinary course of things, to be disproved by negative evidence, as proof of plain facts may be, and often is confronted. It will be found, I think, that however broadly judges and elementary writers have laid down the rule, yet most, if not all the reported cases show that very few convictions have taken place without some evidence that a crime has been committed, independent of the confession of the accused. The case of *John Bernish, Foster's Cr. L.* 10, is an instance of a conviction upon the confession of the prisoner. There was, however, one witness who proved him to have been in arms with the rebels ; and the two witnesses who swore to his confession, also saw him among the officers of the rebels, who were confined apart from the common men, and he there gave in his name as a lieutenant. *See Lambe's case,* 2 *Leach*, 625 ; *Thomas' case, id.* 728 ; *Wheeling's case,* 1 *Leach*, 349. In the case of *Rex* v. *White, Russell & Ryan,* 508, the defendants were indicted and tried for stealing four bushels of oats, the goods of William Pearce. On the trial, Pearce could not swear that he had lost any oats. There was

ALBANY,
Jan. 1836.

The People
v.
Hennessey.

ALBANY,
Jan. 1836.

The People
v.
Hennessey.

other evidence: Pearce found that the door of his granary had been forced. Another witness saw two men coming from Pearce's yard about two in the morning, each with a sack on his shoulders. Another swore that the prisoner White asked him to carry oats to a Mr. Johns, who swore that he bought oats at the time mentioned of White; and it was also proved that those oats were of the same kind with Pearce's. The confessions of the prisoner before a magistrate were then produced and given in evidence, although Mr. Justice Burrough doubted the propriety of it, as Pearce was unable to prove that a felony had been committed. The point was reserved for the judges, who afterwards held the conviction right. Another prisoner was tried at the same time, (John Tippet,) for a similar offence, and upon similar testimony, together with his confession. The judges were of opinion that the conviction was right, as there was not only the confession but the evidence of Pearce, which made it probable that oats had been stolen, and also evidence that the door of the granary had been broken. Most of the judges thought the confession alone sufficient; but they laid stress upon the fact that there was other evidence, though not sufficient, perhaps, to prove that a felony had been committed. So, too, in *Rex* v. *Eldridge, Russell & Ryan*, 440, the prisoner was convicted upon his confession for stealing a mare; but it was proved that he had the mare in his possession, under very suspicious circumstances, and sold her for £12, she being worth £35. The judge who presided thought there was not evidence of a felony having been committed, independent of the confession which had been taken before a magistrate. The case was referred to the judges, who were of opinion that there was sufficient evidence to confirm the confession, and that the conviction was right.

*Rex* v. *Falkner & Bond, Russell & Ryan*, 481. The defendants were convicted upon their confession of the robbery of one Halliday. Halliday did not appear upon his recognizance; and there was evidence that Falkner had been desirous of preventing Halliday's appearing. The conviction was held right. These convictions were in 1822 and 1823; and if the rule had been settled by previous cases, where was the necessity for producing any evidence beside the confessions?

The truth is, no court will ever rely upon the confession alone, when it is apparent that there is evidence *aliunde* to prove that an offence has been committed. In the case now before us it was manifest that there were witnesses not before the court, who could have given material testimony to prove facts essential to the body of the offence. In all the cases in *Russell & Ryan*, an attempt was made to prove the felony by testimony other than the 'confession of the prisoner; and in most of them the court were of opinion that the confession was sufficiently corroborated. In this case there was no corroboration; no confession before a magistrate, nor to any person but the prosecutor, and then not under circumstances to show that he was charged with being guilty of a felony. In our opinion such a conviction ought not to be sustained.