## THE PEOPLE *vs.* ANTHONY BADGLEY.

In an indictment for *forging* a promissory note, if the note be *lost* or *destroyed* it is sufficient to set forth the substance, thereof, alleging the loss or destruction of the instrument.

The indictment will be sustained, although it does not allege that the note *purported* to be signed by the person whose name was forged; if it set forth the purport of the note, giving the name of the maker as part of the description, it is sufficient.

Although in the indictment the note is described as made on the     day of May, and the proof is that the forged note was dated on a particular day, a conviction will be sustained notwithstanding the variance, when a satisfactory reason for the omission of a more particular description is given in the indictment.

Evidence of confessions alone, unsupported by corroborating facts and circumstances, is not sufficient to convict ; there must be proof *aliunde* of the *corpus delicti*, although such proof need not be conclusive.

Where a forged note is passed to a sheriff by a debtor against whom the sheriff has as execution, and the question is submitted to a jury to determine whether the note was given for " ease and favor," and the transaction consequently void within the statute, and they convict the defendant charged with the forgery, the conviction will be held good.

THE defendant was indicted for *forgery.* The indictment contains six counts ; in the first of which it is stated that he made and forged a promissory note described as follows : " which said false, forged and counterfeited negotiable promissory note is to the purport following, that is to say—' Ninety days after date, I promise to pay to Anthony G. Badgley or order, fourteen hundred and twenty-eight dollars value received.     May, 1833—Daniel Clark, (endorsed) Anthony G. Badgley' "—adding " a more particular description whereof is now here to the jurors unknown, said note being *destroyed*," and charging the defendant with

ALBANY,
Oct. 1836.

The People
v.
Badgley.

the intent to cheat and defraud Daniel Clark. The *second* count charges the *uttering* and *publishing* of the note with the like intent, and the third charges the defendant with *having the note in possession* with the like intent. The three remaining counts are similar to the three first, except that the defendant is charged with the intent to cheat and defraud one Abraham Myers. The defendant was ried at the Duchess oyer and terminer. On the *fifth* day of August, 1833, he delivered the note to Myers who was sheriff of the county, and had at the time two executions against him, and had threatened to lock up his store, unless he secured him. Myers told the defendant when he received the note, that the creditors in the execution would give him time, and that he would indulge him as long as he possibly could, but no specific time was mentioned. The money when collected to be applied towards payment of the executions. He testified that the note was dated on some day in May, 1833, but on what *particular day* he could not state. On the *twelfth* of August, the defendant made an assignment of his property to one Losie, his accommodation endorser, and to one Heermance, in trust for the payment of his debts, and on the same day applied to the sheriff to deliver up the note to him, saying he had made provision for its payment in the assignment. Losie sent notice to the sheriff not to deliver up the note. On the next day the sheriff, Losie, and the defendant were together, and the latter requested Losie to take up the note, saying it would do nobody any good, *that he himself was the drawer or maker of it, and that Daniel Clark never saw it.* About the first of September Losie received the note from the sheriff, having become responsible for the payment of the executions, and the defendant having been threatened with an indictment for forgery. Losie, on the day preceding the commencement of the general sessions in Dutchess, was invited to the house of the defendant where he met the defendant and several of his relatives. The defendant was very solicitous that his friends should procure the note from Losie, who offered to surrender it on being secured $500. After much hesitation, the friends of the defendant gave their note to

Loise for $500, and obtained the forged note which they gave to the defendant, who immediately burnt it. It was proved that the defendant had said that he had taken the note for *pork* sold, and that the drawer, Daniel Clark, was a wholesale dealer, residing in New York. Daniel Clark died about two months previous to the trial; he was a member of a firm with whom the defendant opened an account in April, 1833, and to whom he was indebted on the second day of August following, in the sum of $1200; no part of which had been paid. The firm did not buy pork of him in 1833, and Daniel Clark did not carry on business separate from the firm. The defendant had sustained a good character until his failure in business. The judge charged the jury that the indictment must be considered as charging the forging of a note, the date of which was *unknown* to the jurors, and not as a note *without date;* if, however, the jury believed that the defendant had been misled by the manner in which the note was described, they must acquit him; that the production of the note could not be required when it was proved, as in this case, that it had been destroyed, and if the jury were satisfied that a forgery had been committed by the defendant, they were authorized upon the evidence given to convict him. That if the note was passed to the sheriff to induce him to violate his duty as a public officer by abandoning his lien or levy, or by delay or indulgence, inconsistent with his duty, the act was illegal and void, and in judgment of law there was no uttering or publishing of the note; but if passed to be collected, and the money when received to be applied towards satisfaction of the executions, the transaction was not illegal, and such passing of the note was evidence that the defendant had it previously in possession with the intent to defraud Clark, although it remained his property while in the hands of the sheriff. The jury convicted the defendant, who having procured a bill of exceptions to be sealed, the sentence of the court was suspended to procure the decision of this court upon the case. The cause was argued here by

S. *Cleaveland*, for the defendant.

S. *Beardsley*, (attorney general) for the people.

*By the Court*, NELSON, C. J. The note having been destroyed by the defendant, so that neither the original or a copy could be produced before the grand jury, an exact description of it in the indictment is not to be expected or required. Unless this was so, a conviction in most cases, would be impossible, where the forged instrument was lost or destroyed. Where the description cannot be given either literally or in substance, the reason for the omission must be stated, and then such an account of it as shall fairly apprise the prisoner of the particular offence charged, is all that can be demanded. The view applies emphatically to a case where the prisoner has himself intentionally concealed or destroyed the instrument. 2 Cowen, 522, and cases cited.

Although the indictment does not, in express terms, aver that the note forged purported to be signed by Daniel Clark as maker, still it professes to set out the purport of the entire note, and the name of Daniel Clark is given as that of the maker. It is a part of the description of a note alleged to have been forged and counterfeited. The counts are informal in this respect, but substantially good.

It is said the note, the purport of which is set forth in the indictment, if conceded to have been counterfeited by the defendant, would not establish the crime of forgery. I am not sure that I comprehend the force of this objection, but suppose it to be nothing more than a reiteration of the position taken, and disposed of in the second point. It is no doubt true, if the indictment is to be viewed as not containing a proper averment of the forgery of the name of Daniel Clark as maker of the note, no offence is charged; but I have before given what is deemed an answer to this objection.

It is urged, that as the note proved to have been forged bore date on a *particular day* in *May*, it must be considered as different from the one the purport of which is set forth in the indictment, which does not specify any *day*. This objection is answered in the first point. It is resolveable into

the proposition that the note, under any circumstances, must be perfectly if not literally described.   The pleader does not profess to give the date, and assigns his reason for the omission ; one that satisfies the rule of law.

It is said that the confessions of the defendant were not of themselves sufficient evidence to authorize a conviction, without proving *aliunde* that the crime charged had been committed by some one.   This I am of opinion is the only important question in the case.   In the case of *The People* v. *Hennessey*, 15 Wendell, 147, this court after a review of the cases and authorities by Chief Justice Savage, came to the conclusion that the prisoner had been wrongfully convicted upon proof of his confessions alone, although it was apparent there was other evidence, which was not produced to prove that an offence had been committed.   The prisoner was tried and convicted under the statute, 2 R. S. 678, § 59, upon a charge of embezzlement of money collected while in the employment of another, and the conviction was had upon his own confession, without any corroborating fact or circumstance.   None of the persons from whom the money was collected were called. In the case under consideration, *Clark*, whose name was alleged to have been forged, died before the trial.   His son proved that the defendant, in April, 1833, opened an account with the house in the city of New York of which his father and himself were members.   The first bill was made in April, amounting to $520; and between that date and the 2d of August following the account was increased to $1200, and nothing had been paid.   The defendant pretended that the note was given for pork sold in the city of New York; this witness proved, so far as his knowledge extended, that none had been bought of the defendant in 1833, by his father or the firm, and that his father was in easy circumstances as to property.   In addition to these facts it appeared that the defendant was very solicitous to regain possession of the note from the sheriff, and also from *Losie*, after it had passed into his hands; that his connections, by reason of his great anxiety and importunity, advanced $500

to obtain possession of it ; and that it was burnt by him as soon as it came into his hands. The admission of the defendant that he forged the note is very full and explicit, though made under circumstances and with an object that might well qualify its effect, were it not for the other evidence in the case. It must be conceded that the allegation of the forgery of the note was made with a view to impress Myers and Losie with the belief that it was valueless, and thereby induce them the more readily to give it up. Hence a motive existed for the assertion, even if the note were genuine. But this explanation, which might have been thus given to the confession, discreditable enough as it was to the defendant, is rebutted by the fact of the immediate destruction of it when it came into his hands. The admission of the forgery is thus not only left unexplained, but is confirmed. Why destroy a note against a responsible maker, if it was genuine ? This is a strong corroborating fact, irreconcileable with the idea of innocence, especially when the individual is shown to be a man of intelligence and of business habits. It should be remembered too, in connection, that the note was purchased by the friends of the defendant at his earnest solicitation, avowedly to prevent a threatened criminal prosecution, upon the eve of the sitting of the court. There are other facts and circumstances tending to confirm the truth of the confession. I assume that Daniel Clark whose son was a witness, was the person referred to by the defendant. If not, and some other individual of that name was the real maker of the note, the defendant should have produced him, and proved the falsity of his own admission. This it was competent for him to have done, and the omission raises a strong inference against him. If the note was genuine and the defendant innocent, he had the means within his control to contradict the only evidence against him. Of course he knew, in such case, the maker, and if he was not to be found, he could at least have given some proof of the transaction out of which the note arose. If it was given on a sale of pork, as he had alleged, why did he not prove the fact, or some circumstances connected with it ? He not only omitted every explanation of this sort clearly within

his power if innocent, but we have on behalf of the prosecution negative evidence that his account of the note, when he was negotiating it, was untrue. The son of Clark, who was an active member of the firm, knew nothing of the sale of the property for which the note was alleged to have been given; and the fact of an indebtedness to the amount of $1200 tends greatly to repel the idea that Clark ever gave any note to the defendant.

ALBANY,
Oct. 1836.

The People
v.
Badgley.

Full proof of the body of the crime, the *corpus delicti*, independently of the confession, is not required by any of the cases ; and in many of them slight corroborating facts were held sufficient. Here there are a number of facts, and some of them strong and convincing. The highest and best evidence in the power of the prosecutor was produced, and no effort was made by the accused to explain, where explanation was easy and complete upon the assumption of innocence. There is much circumstantial evidence of the forgery of the note, which, in connection with the confessions, brings the mind to a satisfactory conclusion of the defendant's guilt—a conclusion justified by abundant authority. Most of the leading cases were reviewed in the case of *Hennessey*, and it would be useless again to go over them.

It is not material to inquire whether the note was passed to the sheriff for "ease and favor," 1 R. L. 432; 2 R. S. 286, § 59 ; 7 Johns. R. 159; 8 id. 76; and being thus void, whether here was an uttering and publishing within the *second* and *fifth* counts of the indictment. Even if the rule was, as contended for by the counsel for the defendant, the manner in which the point was submitted to the jury obviates all objection. But there can be no ground for objection to the testimony in respect to the other counts; if it establishes any thing, it is the forgery of the note with the intent to defraud *Clark* or *Myers*, or both, as well as the possession of it by the defendant knowing it to be forged, with the intent to utter and pass it for the like purpose.

The judge erred, I think, in submitting the question to the jury whether the description of the note in the indictment was such as to mislead the defendant or not, in preparing

ALBANY,
Oct. 1836.

The People
v.
Badgley.

his defence. That question belonged to the court. The error, however, was in favor of the prisoner, as we are satisfied there was no valid objection to the description, nor any variance between it and the proof.

Proceedings remitted to oyer and terminer.