## COMMONWEALTH *vs.* THOMAS STEARNS, Jr.

By " the money or property of another," the embezzlement of which by any agent, clerk or servant, without the consent of his employer, is made larceny by the Rev. Sts. *c.* 126, § 29, is meant the money or property of any person except such agent, clerk or servant who embezzles it.

An auctioneer, who receives money on the sale of his employer's goods, and does not pay it over, but misapplies it, is not such an agent or servant as is intended by the Rev. Sts. *c.* 126, § 29 ; whether he receives the goods for sale, in the usual mode, or receives them on an agreement to pay a certain sum therefor, within a specified time after the sale. The money received by an auctioneer, for goods sold by him, in both these cases, is his own, and not " the money of another."

BY the Rev. Sts. *c.* 126, § 29, " if any officer, agent, clerk or servant of any incorporated company, or if any clerk, agent or servant of any private person, or of any copartnership, except apprentices and other persons under sixteen years of age, shall embezzle, or fraudulently convert to his own use, or shall take, or secrete, with intent to embezzle and convert to his own use, without consent of his employer or master, any money or property of another, which shall have come to his possession, or shall be under his care, by virtue of such employment, he shall be deemed, by so doing, to have committed the crime of simple larceny."

The indictment, in this case, alleged that the defendant, in consideration that Elbridge Gerry would employ him as agent for the sale of cotton goods, undertook and engaged to serve said Gerry as his agent, in the employment of auctioneer, and to pay over to him promptly the cash proceeds of said goods, at eight cents per yard, which the defendant should sell for said Gerry at public auction ; and that said Gerry delivered and intrusted to the defendant in said employment, as his agent, four bales of cotton goods to be sold as aforesaid, and the cash proceeds thereof, at eight cents for each yard, to be paid to said Gerry, by the defendant, within three days after the sale there of ; and that the defendant, by virtue of said employment, and as agent of said Gerry, took said goods and sold the same for cash and received in payment therefor the money and price and proceeds thereof, viz. $ 272 ; and that the defendant, having in his possession the said money, being the property of said Gerry, afterwards unlawfully and fraudulently embezzled and converted the same to his own use, and took and secreted the same, with intent to embezzle and convert the same to his own use, without the consent of said Gerry ; whereby, and by force of the statute in such case made and provided, the defendant is deemed to have committed the crime of simple larceny : And so the defendant, " with force and arms, in manner and form aforesaid, the same money and proceeds aforesaid, of the money and property of said Gerry, in his possession as aforesaid, feloniously did steal, take and carry away," &c.

The defendant having been convicted on this indictment, in the municipal court, alleged exceptions to the following instructions given to the jury : " That an auctioneer is within the meaning of. the provision of the Rev. Sts. *c.* 126, § 29 : That, as matter of law, the specific proceeds of the goods received from said Gerry were the property of said Gerry ; and that the defendant refusing to pay over the said proceeds to said Gerry, when called on so to do, nor paying the same amount in any other way, constituted embezzlement, according to the true meaning and intent of the statute aforesaid : That the defendant had no right, with the proceeds of the goods received from said

Gerry, to pay any of his other debts, and that by so doing, without said Gerry's consent, he unlawfully converted the same to his own use, against the meaning and intent of said statute ; and that if the defendant, having got the money into his hands, knowingly and designedly applied it to his own use, either to payment of his debts, or his expenses of business and living, it was a clear breach of trust, and an act of embezzlement, within the meaning and intent of the law aforesaid."

*Whiting,* for the defendant.

*Austin,* (Attorney General,) for the Commonwealth.

DEWEY, J. The questions raised in the present case require a construction of the Rev. Sts. *c.* 126, § 29, and are of no inconsiderable importance in their consequences, in marking the distinction between those acts which are to be denominated as felonies punishable by ignominious punishment, and those defaults in the payment of money or in the discharge of contracts, for which, however unjustifiable, the law authorizes no other mode of redress than a civil action by the party aggrieved.

The principles of the common law not being found adequate to protect general owners against the fraudulent conversion of property by persons standing in certain fiduciary relations to those who were the subject of their peculations, certain statutes have been enacted, as well in England as in this Commonwealth, creating new criminal offences and annexing to them their proper punishments. The consequence is, therefore, that many acts which formerly were denominated mere breaches of trust, and subjected the party to a civil action only, have now become cognizable before our criminal courts, as offences against the Commonwealth. These statutes necessarily require a careful discrimination in their application to the various cases that may arise, and it may be found somewhat difficult to mark out, with entire precision, the line of discrimination between acts punishable as crimes, under these statutes, and those that may not be embraced by them, while they may yet present strong cases of breach of good faith and violation of the confidence reposed in the party guilty of the breach of trust.

The court have therefore very carefully considered the facts

disclosed in the case now before us, and the result to which we have arrived will be stated, after disposing of a preliminary objection, that was suggested by the counsel for the defendant, though apparently not much relied upon.

This objection was, that it is necessary, in order to bring the offence within the Rev. Sts. *c.* 126, § 29, that the property embezzled should belong to some other person than the master or principal, whose servant or agent is charged with the embezzlement ; inasmuch as the statute provides that " if any clerk, agent or servant, &c. shall embezzle or fraudulently convert to his own use, or shall take or secrete, with intent to embezzle and convert to his own use, without the consent of his employer or master, *any money or property of another,*" &c.

A similar objection appears to have been overruled by the supreme court of the State of New York, in an indictment on the revised statutes of that State, *vol.* 2, *p.* 678, § 59 ; a statute from which ours seems substantially to have been framed : The words there used are, " belonging to any other person ; " but the court held that these words, as used in the statute, meant any other person than he who is guilty of the embezzlement. *The People* v. *Hennessey,* 15 Wend. 147. A different construction from this would be inconsistent with the earlier course of legislation on this subject, (see *St.* 1834, *c.* 186,) and would leave unprovided for all cases of embezzlement, by servants or agents, of the property of their masters or their principals. We are of opinion that the offence, made punishable by the revised statutes of this Commonwealth, *c.* 126, § 29, was not intended to be restricted in the manner suggested by the counsel for the defendant, but may properly be held to embrace cases of embezzlement by servants or agents of the property of their masters or principals.

The point, however, principally relied upon in the defence, was, that the facts proved in the present case, as stated in the bill of exceptions, do not show any such embezzlement or fraudulent conversion of the property of the principal, which came to the hands of the defendant as an agent, as will subject him to the penalties annexed to the offence punishable by the statute.

The question here presented may be properly considered under two aspects. 1. As to the rule of law applicable to the subject, treating the case as one arising in the usual course of business as between an auctioneer and his principal, who has detained property intrusted to him to be disposed of at auction. 2. As a case disclosing a special contract as to the amount to be realized from the sales, and to be paid over by the auctioneer to the principal.

1. Our first inquiry, therefore, will be, whether the ordinary relation between an auctioneer and his employer is such, that the mere neglect of the auctioneer to pay over the money due to the principal, as the avails of a sale of his property at auction, constitutes such a case of embezzlement as will sustain an indictment like the present, charging a felonious conversion, and concluding as it does, (and properly so concluding, if the facts bring the case within the statute,) with the allegation " that the defendant, with force and arms, the same money and proceeds, of the money and property of said Gerry, in his possession as aforesaid, feloniously did steal, take and carry away," &c.

It seems to us to be very clear, that the statute under consideration does not embrace such a case as is above stated, arising in the general course of the business of an auctioneer. It does not present a case of embezzlement of money specifically the property of the alleged principal ; but, so far as the matter is cognizable by law, must be treated rather as a gross default in not performing a contract, than the commission of an act of embezzlement. It is to be borne in mind, that it is not contended that there has been any misappropriation or unlawful conversion of the specific articles intrusted to the auctioneer, for sale ; these goods having been sold by the defendant, for aught that appears, in entire accordance with the terms of his contract with his employer, and the proper discharge of his duties as auctioneer.

The property having been thus properly sold, what was the duty of the auctioneer in relation to the avails of the sale of the same ? Might he not, without subjecting himself to the penalties of this statute, intermingle the money, arising from this sale.

with that derived from the sale of other articles ?    Might he not properly deposit the money in a bank, in his own name ?    Suppose, in payment for an article thus sold, he had received a bank bill of a larger denomination than sufficient to discharge the amount due from the purchaser of an article sold, and had given in exchange money of his own ; might he not properly do so ? and having done thus, might he not treat such bank bill as his own property, holding himself accountable to his employer for the sum due him on account of the sale ?

From the very nature and course of proceedings, in cases of sales by auctioneers and commission merchants, the money arising from the sale of the goods of one man may be intermingled with that arising from the sale of those of another ; and they often must be so intermingled, unless the principle shall be adopted, that a separate place for safe keeping is to be provided for each separate employer or customer.    The auctioneer, having the right thus to intermingle the money arising from different sales made on account of different persons, and being guilty of no offence in depositing in a bank, in his own name, it necessarily follows that it will not be a safe or just rule, to hold that his guilt or innocence, when charged with embezzlement under the statute, is to depend upon the fact of his paying the amount due to his employer, upon demand of payment by him.    Various casualties obviously might occur, which would morally justify the default ; as, for instance, the failure of the bank in which the sum was deposited, a loss by fire, &c.    Without some such justification or excuse, a withdrawal, by an auctioneer, of the funds from which he ought to realize the means of paying his principal, would be a breach of trust, and a violation of that good faith, which ought to regulate the conduct of one holding such a relation to his employer.    But however censurable, in point of morality, it may be, it would not be that fraudulent conversion of the money of the principal, which was made an offence punishable under the statute under consideration.

The question we are considering may be tested also by another view of the legal rights and liabilities of parties standing in the relation of auctioneer and principal.    Suppose the auc-

tioneer to receive the money and place it in his money drawer, and while there, it is stolen ; or suppose he receives in payment bank bills of a bank then in good credit, but, while he has the money in his custody, the bank fails. Would not, in either of the above supposed cases, the loss be the loss of the money of the auctioneer, and to be borne by him ? If this be so, is it not very clear that such a principle necessarily assumes that the specific money, received, as the avails of a sale at auction, is the money of the auctioneer, and while in his hands subject to his control, and he only accountable for the payment of the sum due to the owner of the goods sold ? It seems to us, therefore, that the neglect of an auctioneer to pay over to his principal the amount due to him, as the avails of auction sales of property intrusted to him to sell as an auctioneer, does not constitute an act of embezzlement, within the meaning and intent of the statute.

2. Nor do we perceive that the case on the part of the Commonwealth is at all aided by the peculiar nature of the contract entered into between the owner of the goods and the auctioneer, in which the defendant stipulated that he would pay over to the principal the sum of eight cents per yard for each yard of cotton goods so sold by him for his employer. Such a contract would, from its very nature, seem rather to strengthen than diminish the force of the objections already suggested to the bringing of the present case within the statute. If it be true, in the ordinary case of goods intrusted to an auctioneer to be sold, where the whole proceeds, more or less, are to be accounted for with the principal, that the money, proceeds of the sale, received by the auctioneer, are not so far specifically the property of the principal, that the neglect and refusal to pay over the amount of the same will subject the party to an indictment for embezzlement ; the objections certainly are much stronger where the amount to be paid by the auctioneer to the principal does not depend upon the sum realized from the sale at auction. The auctioneer, under this special contract with his employer, stipulated to pay him a certain sum per yard, for each yard of cotton goods sold for him ; and the right of the principal to demand

money of him did not depend upon the price for which the goods were sold, or upon the receipt of money from the sales. If the sales were for less than eight cents per yard, the defendant had promised to make up the deficiency from his own funds ; and to this extent his employer certainly relied upon the naked promise of the defendant.

If sales were effected at a price exceeding eight cents per yard, the defendant had the right to retain and appropriate the excess to his own use. It seems to us very clear that the special contract proved in the present case has no tendency to bring the case within the statute, or to subject the auctioneer to its penalties for not paying over the amount stipulated to be paid to the principal.

The views we have expressed of the law applicable to the present case obviously conflict with those under which the case was submitted to the jury, and the result must therefore be, that the verdict be set aside and a

*New trial granted*