(13 App. Div. 342.)

BECKER et al. v. BECKER et al.

(Supreme Court, Appellate Division, First Department.   January 15, 1897.)

1. WILLS—DEVISE IN TRUST—SUSPENDING POWER OF ALIENATION.
    A devise in trust of realty and personalty to apply the income thereof to the maintenance and education of testator's children, two of whom were minors, and to divide the property equally among the children as soon as the youngest

reached the age of 21 years, will not fail for suspending the power of alienation in that the trust estate is not made dependent on a life or lives in being, but on a term of years, since the court will imply an alternative, and make the trust terminable at the attainment of majority of the minor on whose life the suspension is limited, or the earlier death of that minor.

**2. SAME—SEVERANCES OF LAWFUL AND UNLAWFUL TRUST.**

Where the dominant purpose of a testator in creating a trust was to provide for the maintenance and support of his minor children, a further purpose to have the trustees pay off a mortgage on the land with the surplus income therefrom, is separable from, and will not affect the validity of, the main purpose.

**3. SAME—CONSTRUCTION OF STATUTE OF USES AND TRUSTS.**

A devise of real and personal property in trust to collect the rents and income thereof, and, after paying charges, to apply the balance to the maintenance and education of testator's minor children, and to pay off the mortgages on his real estate, creates a valid express trust under 1 Rev. St. p. 728, § 55, providing that express trusts may be created to lease lands for the benefit of the legatees, or for the purpose of satisfying any charge thereon. Van Brunt, P. J., and Williams, J., dissenting.

Appeal from special term, New York county.

Action by John Becker and others against Jacob Becker, as sole surviving executor of the will of Gottlieb Becker, deceased, and others, to construe the will. From a judgment declaring void a trust created by the will, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

H. M. Gescheidt and John M. Gitterman, for appellants.

Charles M. Camp, for respondents.

PATTERSON, J. This is an appeal from a judgment entered at special term giving construction to a certain clause of the last will and testament of one Gottlieb Becker, and declaring and adjudging that a trust created by the said will is invalid and void. The trust referred to is provided for in the third clause of the will. The testator, after directing the payment of debts and funeral expenses, and appointing executors and trustees, gave, devised, and bequeathed "all my property and estate, both real and personal, of which I am now seised and possessed, or of which I may be hereafter seised and possessed, to my before-named executors and trustees, and the survivor of them, in trust, however, to possess themselves of the same, and to take, collect, and receive the rents, issues, profits, and income thereof, and, after paying all taxes, assessments, Croton water rents, interest, costs of insurance, repairs, and all other necessary expenses which may be imposed upon my real estate, and be necessary to keep the same in proper and running order, to apply the same to the proper maintenance, support, and education of my minor children, and to paying off the mortgages which are now liens on my real estate." By the fourth clause of the will the whole estate is left to the testator's five children, "to be divided between them by my said executors and trustees, equally, share and share alike, as soon as the youngest of my said children shall have arrived at the age of twenty-one years." The testator died in February, 1891. The will was executed in November, 1886, and was ad-

mitted to probate in March, 1891. The five children named in the will survived their father (two of them being minors), the youngest a daughter about 13 years of age when the testator died. The estate passing under the will consisted of a small amount of money in bank, and two houses and lots in the city of New York, upon which there was an outstanding mortgage.

The first point urged in opposition to the will is that the absolute power of alienation is unlawfully suspended, in that the trust estate is not made dependent upon a life or lives in being, but upon a term of years, viz. so many as would be comprised between the age of the testator's youngest child, being a minor at the time of his death, and the attainment of majority by that minor child. But the rule in cases of the construction of trust terms of this character is that unless a contrary intention is clearly made to appear from the will, the court will, in support of an otherwise valid trust, imply an alternative, and make the trust terminable at the attainment of majority of the minor upon whose life the suspension is limited, or the earlier death of that minor. As was said by Duer, J., in Lang v. Ropke, 5 Sandf. 369: "A devise to trustees to receive and apply rents and profits during a minority is not an absolute term of years corresponding with the possible duration of the minority, but is determined by the death of the minor before he attains age." This construction of the limitation was adopted both by the chancellor and the court of errors in Hawley v. James, 5 Paige, 463, 16 Wend. 61, and "must now be considered as the settled law of the state." Here the testator has plainly provided that the whole estate shall be divided among the remaindermen when his youngest child reaches majority, and the rule referred to applies.

But it is further urged, and the court below adopted the view, that the trust for the application of rents, issues, and profits of land to the payment of mortgages was one constituted for an unlawful purpose, was therefore invalid, and was so intimately and inseparably connected with that created for the lawful object of the support and maintenance of minor children that it could not be cut off from the valid purpose, but the whole trust must fail. Assuming, for the moment, that the provision as to the application of rents is invalid, it is not so interwoven with the valid trust purpose that it may not be severed therefrom, and the trust for that valid purpose be sustained. Where the trust term does not exceed in duration the permission of the statute, the unlawful trust purpose may be disregarded, and the intention of the testator as to the lawful purpose he made effectual (Savage v. Burnham, 17 N. Y. 573; Manice v. Manice, 43 N. Y. 303; Schettler v. Smith, 41 N. Y. 328; Tiers v. Tiers, 98 N. Y. 568; Kennedy v. Hoy, 105 N. Y. 134, 11 N. E. 390; Cross v. Trust Co., 131 N. Y. 339, 30 N. E. 125), unless the entire scheme of the trust is such that the intention as found of the testator would be defeated by the rejection of any part of the trust as he constituted it (Tilden v. Green, 130 N. Y. 29, 28 N. E. 880; Knox v. Jones, 47 N. Y. 389; Benedict v.

Webb, 98 N. Y. 460; Kennedy v. Hoy, supra). It seems to be quite clear that the dominant purpose of this testator was to provide for the support and maintenance of his minor children, even to the extent of having all the net income of his estate applied to that object, if necessary. That is shown by the limitation of the trust term. The application of rents to the payment of mortgages outstanding on the land is not connected with that controlling purpose. The one object is in no wise dependent on the other. Whatever may have been the disposition of the courts heretofore by narrow constructions to bring trust provisions within the condemnation of the statute, we are admonished that the tendency now is "in the direction of liberality in construing the statute; and, while there has been no abatement by the courts in the strictness with which limitations are construed which transgress the rule of perpetuity, arrangements within that limit and dispositions by way of trust are sustained if they can fairly be brought within the spirit of the statute, although not within its literal language." Cochrane v. Schell, 140 N. Y. 532, 35 N. E. 976. The admitted valid part of this trust is within both the spirit and the letter of the statute. It was constituted for the chief purpose the testator had in mind, and may be carried out without reference to the other branch of the trust. And this valid purpose thus declared may be made effectual notwithstanding a part only of the rents, issues, and profits may be required for the support and maintenance of the minor children. That was held in the case last cited with respect to a trust to pay annuities out of rents, where those annuities were in amount but a fractional part of the gross rents of the trust property, and an implied direction for an accumulation of the residue of those rents was to be inferred. The syllabus of the case (140 N. Y. 516) succinctly states what the court held, viz. that "where such a trust is constituted duly limited in point of duration, the title of the whole estate vests in the trustee during the trust term, although the valid trust purpose will not absorb the whole income, and, connected with the lawful purpose, is an express or implied direction for an unlawful accumulation, except, at most, when the valid purpose is nominal only, being inserted as a mere cover for the unlawful accumulation." And it was further held that the surplus income belonged to and was distributable among those entitled to the next eventual estate.

The foregoing views would necessarily lead to a modification of the judgment below, but I am of the opinion that the judgment should be reversed absolutely, and that the trust to pay off charges or mortgages on the land out of rents, issues, and profits is a valid express trust under section 55 of the statute of uses and trusts (1 Rev. St. p. 728). Although the testator has not used the word "lease," it is admitted by all parties that the power to make leases is given. By conferring an estate upon and directing the application of rents by the trustees, the authority to obtain rents of these city apartment houses by making leases is necessarily included. By the second subdivision of section 55 of the statute it is provided that 'an express trust may be created "to sell, mortgage, or

lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon." This second subdivision has been construed differently by the courts of this state. It was decided in the case of Cowen v. Rinaldo, 82 Hun, 479, 31 N. Y. Supp. 554, that with respect to the application of rents, issues, and profits for the payment of mortgages, such a trust was void; and that decision was based upon what is stated as having been the interpretation of the statute announced in the case of Hawley v. James, 16 Wend. 62, and upon expressions contained in the opinion in that case, that a trust to sell, mortgage, or lease lands for the benefit of legatees, or for the purpose of satisfying any charge, is one for alienation, and not for the suspension of alienation. It is claimed that opposed to this is the case of Goebel v. Wolf, 113 N. Y. 415, 21 N. E. 388, in which such a trust was upheld. But that case is not authority either way, it having been conceded by all parties that the trust was valid, for which reason the court declined to discuss the subject. But Parks v. Parks, 9 Paige, 116, is a direct decision favoring such a trust. It is there said by the chancellor:

"That the Revised Statutes have authorized the creation of an express trust to lease lands for the purpose of satisfying a charge thereon. The authority of the trustee, therefore, to pay the interest of the incumbrances out of the rents and profits of these lots in the first place, and to apply so much of those rents and profits as might be spared from the support of the cestui que trust to reduce the principal of the incumbrance of their respective lots was therefore valid, and should be carried into effect according to the intention of the testator."

That ruling was made upon a question necessarily involved relating to a trust created in two pieces of property mentioned in a will, and what was said by the chancellor was required in the determination of the validity of that trust. There is no official report of the further history of the case of Parks v. Parks to be found in the books, except that its authority has been recognized and confirmed by the court of appeals. What was decided in that case with reference to another trust involving the interpretation of the third subdivision of the fifty-fifth section of the statute of uses was adopted by the court of appeals as conclusive upon that subject. In the case of Leggett v. Perkins, 2 N. Y. 297, it is declared that the decision of the chancellor was on appeal to the court of errors affirmed by a vote of ten to eight. The statement appears distinctly that it was the opinion of the chancellor that was affirmed, and in that opinion construction was given to this same second subdivision of the section under consideration; and that the case of Leggett v. Perkins was decided eventually upon the preponderating weight given to that opinion appears from the remarks of Mr. Justice Bronson that it thus "happened that a great question, which has been litigated more than fifteen years, is at last settled by a single vote, and that vote governed by a supposed decision, which I verily believe was never made"; and Judge Gardner, who wrote the principal opinion in Leggett v. Perkins, referring to Parks v. Parks, in the court for the correction of errors, states that the question as to the trust the court was then considering should be regarded as at rest upon the authority of that case. Thus we have the declara-

tion of the court of appeals as to the value of the decision of the chancellor in his interpretation of this fifty-fifth section as a binding authority; and it would follow that its force is conclusive with respect to the construction to be given as well to the second as to the third subdivision of that section.

But, a part from any question of authority at all, or the conflict in judicial opinion, and considering the question as an entirely new one, it appears to me from the provisions of the statute of uses themselves, and from the well-known object for which that statute, so far as it relates to express trusts, was passed, that it is quite clear that a trust to lease lands and apply the rents, issues, and profits to the payment of charges or incumbrances upon land is a valid express trust. The revisors, in this fifty-fifth section, made no new express trusts. They merely classified and grouped together, calling them express trusts, such subjects and purposes as required the person charged with the execution of those purposes to have a title and estate in the land to be affected. Every other agency or control or authority over land, and which did not require that a title or estate should vest in the person to whom that authority was given, was put into the category of simple powers in trust. To use the language of the revisors themselves:

"The object of the revisors in this section is to allow the creation of express trusts in those cases, and in those cases only, where the purposes of the trust require that the legal estate should pass to the trustees."

The argument that the trust to pay incumbrances out of rents is an invalid trust proceeds upon the assumption that the trust purpose may be accomplished by a single act of leasing, or granting the land for a term of years for a gross sum,—an act which would not require the vesting of an estate, but which could be accomplished under a power; and this is supposed to be a deduction following from the expressions referred to, used in the case of Hawley v. James, that the trusts in the first and second subdivisions of section 55 are trusts in aid of alienation, while those contained in the third and fourth subdivisions are in suspense of alienation. But the revisors certainly knew in what sense they were using the word "lease" in the second subdivision. It is the common eulogium of the Revised Statutes that in no other compilation of law are technical terms and words of art used with more precision or as appositely as in that work. The word "lease" is used in its legal sense, and according to its strict definition. "A lease is a contract for the possession and profits of lands and tenements on one side and a recompense of rent or other compensation on the other." 4 Cruise, Dig. 54. It necessarily implies the relation of landlord and tenant. "A lease is a contract for the possession and profits of lands and tenements on the one side and a recompense of rent or other income on the other, or it is a conveyance to a person for life or years or at will in consideration of a return of rent or other recompense. The person letting the land is called the 'landlord,' and the party to whom the lease is made the 'tenant.'" Woodf. Landl. & Ten. c. 1, § 1. What authority or reason is there for the assumption that

the revisors used the word "lease" in any other than its legal sense or meaning, or that they did not intend to allow the establishment of the relation of landlord and tenant to raise money to pay incumbrances? The reception of rent is the fundamental idea connected with a lease, and the relation of landlord and tenant must be established in order that the landlord may receive the rent, may enforce covenants, may re-enter for conditions broken, and grant new terms on default by the tenant in the payment of rent.

The foregoing view is further authorized when we take into consideration the next section of the statute. Although by the first and second subdivisions the authority to sell lands for the benefit of creditors, and to sell or mortgage them for the benefit of legatees or to satisfy charges are enumerated as trusts; yet it is apparent that those purposes may be accomplished by a single act, and that is undoubtedly the consideration that suggested the phrase that the two subdivisions of the statute referred to were for the creation of trusts in aid of alienation. But by section 56 it will be perceived that whenever the trust purpose can be accomplished by a single act, the trust in the case of a devise is cut down to a simple power. Section 56 provides:

"A devise of lands to executors or other trustees to be sold or mortgaged, where the trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees, but the trust shall be held valid as a power and the land shall descend to the heirs or pass to the devisees of the testator, subject to the execution of the power."

This situation of a single act alone being required was contemplated and provided for in the statute, but from that provision is carefully excluded the leasing of lands. They are not included for the obvious reason that, the reception of rents, issues, and profits being necessary to a trust estate, the taking and application of the rents arising from a lease were regarded as necessary to the satisfaction of charges or incumbrances upon land; or, in other words, necessary for the purpose of the trust. Why, from section 56, when naked trusts created by devise to sell or mortgage are cut down to powers only, are leases for the purposes mentioned omitted? There must have been some reason for it. That fifty-sixth section was enacted after the original report of the revisors was presented, for, as originally reported to the legislature, what is now the fifty-fifth section was the fifty-sixth section of the statute. The reason was simply because in the very nature and substance of a lease is involved the collection of rents and profits as they accrue. If it were ever intended to limit the second subdivision of the fifty-fifth section to the reception of a gross sum to be obtained when the lease was made, that single and simple act could be done under a power just as well and as fully as the receipt of the consideration money on a sale or mortgage of land. The exemption of the lease in section 56 presupposes that more than one single act is to be done by the trustee in the performance of his trust duty, and he must have an estate in the land to enable him to perform it.

I am of the opinion, therefore, that from the structure of this statute, the well-known purpose for which it was enacted, and the ne-

cessity that arises from the very nature of a lease, a trust to pay charges or incumbrances on land out of the rents, issues, and profits of a trust term properly limited as to duration is valid, and that the trust established by the fourth clause of this will is a valid and maintainable trust, and, as a consequence, that the judgment appealed from should be reversed, and the complaint dismissed, with costs to the defendants.

BARRETT and RUMSEY, JJ., concur.

BARRETT, J. I confess that my first impressions were somewhat adverse to the validity of the trust to apply the rents, issues, profits, and income of the real estate to paying off the mortgages, which were liens thereon. I had always supposed that the opinion of Judge Bronson in Hawley v. James, 16 Wend. 61, was the law of this state. But a critical re-examination of that case has convinced me that Judge Bronson's remarks upon the point discussed by Mr. Justice PATTERSON were obiter. They were not necessary to the decision of any question then presented, and they were not restated, in substance or otherwise, by any of the other judges. Hawley v. James was decided in the court of errors in December, 1836. Parks v. Parks, 9 Paige, 107, was decided by the chancellor in April, 1841, and his decision was affirmed by the court of errors in December, 1842. See report of this case, 9 Paige, foot of page 127. The question under consideration was distinctly presented in Parks v. Parks, and was necessary for the decision, both in the court of chancery and the court of errors. It thus appears that nearly six years after Judge Bronson handed down his opinion in Hawley v. James, and with that opinion before the public, and doubtless before the court, the court of errors affirmed the chancellor's judgment upon this very point. Parks v. Parks has not since been questioned. It was approved and followed as to other questions in Leggett v. Perkins, 2 N. Y. 297, and in Van Schuyver v. Mulford, 59 N. Y. 426. The question thus seems to be set at rest by authority. But, looking at it upon principle, I think Mr. Justice PATTERSON'S reasoning, based upon the omission of the word "lease" in section 56 of the statute of uses (1 Rev. St. 729), is entirely convincing. It would, of course, have been incongruous and absurd to provide that a devise of land to trustees to be leased, where the trustees are not also empowered to receive the rents and profits, shall vest no estate, etc. The very act of leasing implies power to receive the rents. The intent, under subdivision 2 of section 55, to create an express trust (with trust title in the trustee) for the benefit of legatees, or for the purpose of satisfying any charge upon the lands, is thus apparent. Such an express trust is not for alienation, but is in suspense of alienation.

The only other difficulty is as to the manner in which the trust is here formulated. It follows the third subdivision of section 55. The expression used accords with the language of this subdivision, and not, in terms at least, with the language of subdivision 2. The trus-

tees are to receive the rents and profits of the lands, and to apply them first to a concededly proper purpose, and next to the paying off of mortgages. I think the intention of the testator was to keep within the statute, and that he has done so; that he acted upon the belief that the rents and profits could only be received by leasing the lands; and that such leasing is clearly to be implied. It is true that trustees may receive the profits of land without an actual leasing. They may, for instance, work farm lands, and themselves secure the crops. But when we consider that the land in question was city property, and that the rents and profits of such property necessarily accrue from a leasing of some sort, the intention of the testator cannot well be doubted. He was not bound to specify the particular subdivision of the section in question, nor to use the precise language of that subdivision. He could lawfully embrace all the trust purposes authorized in the various subdivisions of the section in a single paragraph. All that was necessary was that the various trust purposes should be lawful,—that is, should all be within the section; and that all such trust purposes might lawfully be executed under the power conferred. Here the trustees could lawfully lease to secure the rents and profits to be applied under the twofold direction. They could do so under the strict terms of the trust instrument; and their doing so would be just what the testator contemplated and impliedly directed.

Upon all the other questions I never entertained any doubt. I agree, therefore, that the judgment should be reversed.

RUMSEY and PATTERSON, JJ., concur.

VAN BRUNT, P. J.    (dissenting). I concur in so much of the opinion of Mr. Justice PATTERSON as holds that, even if the direction for the application of a part of the rents, issues, profits, and income of the property and estate, both real and personal; devised to trustees, is invalid, the remainder of the trust may be maintained, and the surplus income distributed among those entitled to the next eventual estate. But I do not concur in the construction placed by him upon subdivisions 2, 3, § 55, p. 728, 1 Rev. St. It is true that in the case of Parks v. Parks, 9 Paige, 116, the chancellor correctly states that the Revised Statutes have authorized the creation of an express trust to lease lands for the purpose of satisfying the charge thereon, and then dogmatically asserts that the authority of the trustee to pay the interest of the incumbrances out of the rents and profits of these lots in the first place, and to apply so much of those rents and profits as might be spared from the support of the cestuis que trustent to reduce the principal of the incumbrances on their respective lots, was, therefore, valid, and should be carried into effect according to the intention of the testator. It is to be observed in the consideration of this language that the chancellor was dealing with a devise of two lots, and the application of a portion of the rents and profits of each particular lot to the reduction of the principal of the incumbrance upon that

lot. The distinction between the powers conferred by the second and third subdivisions of section 55 in respect to the leasing of lands and the receiving of the rents and profits thereof is nowhere considered by the chancellor, does not seem to have been brought to his attention, and is not passed upon.

It is claimed that the rule laid down by the chancellor in the case referred to was adopted by the court of appeals in the cases of Leggett v. Perkins, 2 N. Y. 297, and Van Schuyver v. Mulford, 59 N. Y. 426. But no such question was involved. All that the court stated in those cases was that the question involved in Leggett v. Perkins was distinctly presented in Parks v. Parks, and the validity of a trust of that description was affirmed by their judgment; further stating that the question should be at rest upon authority. The question in the case of Leggett v. Perkins was whether a trust to receive the rents and profits of land and to pay them to a person could be sustained under the third subdivision of section 55, supra, which authorizes a trust to receive the rents and profits of land, and to apply them to the use of any person. That was the only point in the case, and that was the only part of the decision of the chancellor in Parks v. Parks which was approved. That was the question involved in Gott v. Cook, 7 Paige, 523, and in Mason v. Mason's Ex'rs, 2 Sandf. Ch. 432, which are cited as authority in support of the trust then being considered in Leggett v. Perkins. The chancellor's decision was only approved in respect to that particular trust.

But upon an examination of the will under consideration, it would seem that no such question as has been discussed is in any respect involved. No authority in the statute can be found whereby a trust may be created for the purpose of receiving the rents, income, and profits of real and personal property, and devoting them to the payment of incumbrances existing upon a portion of the real estate; and that is the direction contained in the will in question. The testator died, leaving real and personal property. His real estate consisted of two houses and lots, Nos. 347 and 349 First avenue, in the city of New York. Upon the premises No. 349 First avenue was a mortgage of $3,000. And the will devised all of his real and personal property to his trustees, with directions to collect and receive the rents, issues, profits, and income, and, after paying all taxes, assessments, Croton water rents, interest, costs of insurance, repairs, and all other necessary expenses which might be imposed upon his real estate, and be necessary to keep the same in running order, to apply the same to the maintenance, support, and education of his minor children, and to pay off the mortgages which were liens on his real estate. Here is a distinct direction to apply the income and profits of personal estate to paying the charges upon real estate, and to apply the rents, issues, and profits received from one piece of real estate to the payment of the charges upon another. The language of the statute is that a trust may be created to lease lands for the purpose of satisfying any charges thereon. This language does not, by any means, authorize the application of the in-

come of real estate to the payment of liens generally upon such estate. The rents and profits of each particular piece must at least be applied to the discharge of incumbrances upon that piece of real property. Lands may be leased to pay incumbrances thereon is the language of the statute. All this is borne out by the language of the chancellor in his construction of section 55 in Parks v. Parks. He is particular to limit in his language the validity of the trust to the fact that the rents and profits of each lot are to be applied to the reduction of the incumbrance upon that lot. And, furthermore, in view of the condition of affairs at the time of the commencement of this action, I do not see how any question in regard to this provision of the will can come up for adjudication. It appears that two years prior to the commencement of the action the mortgage in question had been paid and discharged; and there is, therefore, nothing whatever in this branch of the case for the judgment of the court to act upon, and it has become merely a moot question, upon which our decision can have no weight. The only event in which it could be important would be·where the question arose as to whether, that provision being void, it would invalidate the whole provision made for the benefit of the minor children; and when we have come to the conclusion, as we have, that that provision might be lopped off, and the provision for the children remain, it becomes entirely unnecessary for us to consider the question as to whether the provision for the application of the rents and profits of the real and personal estate to the payment of an incumbrance upon a portion of the real estate is valid or not. This action was brought, undoubtedly, for the purpose of having the limitations upon the suspension of the power of alienation declared void, and also the provision in regard to the application of income to the use of the infants; and when we have determined those questions in favor of the validity of the will, it seems to me that there is nothing left for adjudication.

The judgment should be reversed.

WILLIAMS, J., concurs.