(28 App. Div. 280.)

### HASCALL v. KING et al.

(Supreme Court, Appellate Division, First Department. April 15, 1898.)

1. WILLS—CONSTRUCTION—CONTRADICTORY PROVISIONS.
   By the third and fourth clauses of a will, the testator devised to his son, absolutely and forever, two parcels of real property, and, by the fifth clause, devised other premises to trustees for the benefit of his widow, during life or widowhood, while by the sixth (and residuary) clause he devised to trustees "all the real estate of which I may die seised, * * * excepting only the premises * * * which I have specifically devised in the fifth clause." *Held*, that the failure to also exclude from the residuary (sixth) clause the property devised by the third and fourth clauses was due to inadvertence, and did not subject it to the trust thereby created.

2. SAME—PROVISION FOR ACCUMULATIONS.
   The will also provided that, "after the payment of the taxes, assessments, repairs, interest on mortgages, insurance, and all charges against my estate, I direct my executors to apply the balance of the net income * * * to the payment and discharge of any and all incumbrances or liens * * * upon my property." *Held*, that this provision was not invalid as an "accumulation," under 1 Rev. St. p. 728, § 55, subd. 4, for by its terms it authorized the application of income directly as soon as received, and no assumption could be indulged in that this could not and would not be done.

3. SAME.
   The mere fact that a payment of mortgages out of income makes the land more valuable does not render it an accumulation.

4. SAME.
   It seems that even if the net income, as it accrues, cannot be immediately and practically applied to the payment of mortgages, it is not an accumulation thereof to apply it by earmarking it, and setting it apart until a sufficient sum is realized to compel the mortgagee to accept his principal and extinguish the mortgage. 1 Rev. St. p. 728, § 55, subd. 2.
   Van Brunt, P. J., dissenting.

Appeal from special term.

Action by Virginia K. Hascall against Vincent C. King, Jr., and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The action was brought for the construction of the will of Vincent C. King, and for the partition of the real estate of the testator, who died in the city of New York on July 2, 1896, seised in fee simple absolute of the seven parcels of real estate mentioned in the complaint,—six parcels in New York county, and a farm in Saratoga county. Nearly all of this real estate was subject to mortgages for a considerable amount. The interest of the testator at the time of his death in the firm of which he was a member is stated by the surviving partner to be about $25,000, and this together with a cash balance in bank of $3,206.65, besides a further asset of the value of $160, represents the personal property which came into the hands of the executors. Claims aggregating $11,032.46 were made against the estate. The principal claim was upon a note held by the executrix, the widow, amounting, with interest, to $9,750.59. The testator left, him surviving, his wife, three daughters, and a son, all of whom are of full age. The will, which has been admitted to probate, is as follows:

"In the name of God, amen. I, Vincent C. King, of the city and county of New York, in the state of New York, being of sound mind and memory, and considering the uncertainty of life, do make, publish, and declare this to be my last will and testament, as follows: First. I hereby direct all my just and lawful debts to be paid. Second. I give and bequeath to my son, Vincent C. King, Junior, all my right, title, and interest, being one full equal undivided half of the capital and other property in the business now carried on by me with my brother C. Volney King, under the firm name and style of V. C. & C. V. King. Third. I give, devise, and bequeath to my said son, Vincent C. King, Junior, all my right, title, and interest, being one full equal undivided half, of the property known as the 'Factory Property,' situate on the southeast corner of Horatio and West streets, in the city of New York, subject to my liability, upon a mortgage of twenty-five thousand dollars now on the same, being one-half thereof, to wit, the sum of twelve thousand five hundred dollars, to have and to hold the same unto him, my said son, his heirs and assigns, forever absolutely. The said bequests to my son are made subject to the payment of the sum of twenty-five hundred dollars per annum, in equal monthly payments of two hundred and eight $33/100$ dollars each, to my wife, Anna Louise King, during the term of her natural life, or as long as she shall remain my widow, and the same shall cease in case she shall marry again. As soon as my real estate, hereinafter mentioned, is relieved from mortgages, and there can be realized from my estate a clear net income of five thousand dollars per annum, to be paid to my said wife, then my son shall be relieved from the payment of said sum of two thousand five hundred dollars. Fourth. I give, devise, and bequeath to my said son, Vincent C. King, Junior, my farm at Wilton, Saratoga county, in the state of New York, consisting of about two hundred and thirty acres, known as the 'King Homestead,' with all the stock and implements of husbandry belonging to me, to have and to hold the same unto him, my said son, his heirs and assigns, forever absolutely. Fifth. I give, devise, and bequeath to my executors and trustees, hereinafter named, and the survivors of them, the premises in which I may reside and be the owner of at the time of my death; also, the furniture and everything useful and ornamental which belongs to me, and which may be in the house in which I reside at the time of my death; also, the horses and carriages, etc., which may belong to me at the time of my death, —in trust, to collect the rent arising therefrom, and to pay the same to my wife during her natural life, or as long as she shall remain my widow; but my wife, in case she desires, may occupy the said house without payment of rent, and may have the free use and enjoyment of said furniture, which may belong to me at the time of my death, and said horses, carriages, etc., during her natural life, or as long as she shall remain my widow. In case my wife does not desire to occupy the said house, and remains my widow, and consents in writing that the same may be sold, I hereby authorize and empower my said executors and trustees, the survivor of them, to sell the said premises, and to invest the amount realized from the sale thereof in real or personal property, and pay the income

arising therefrom to my wife during her natural life, or as long as she shall remain my widow, and at her death, or in case she shall marry again, the said premises, or the amount realized in case the same shall be sold, as hereinbefore provided, shall become part of my residuary estate. Sixth. I give, devise, and bequeath to my executors and trustees, hereinafter named, and the survivor of them, all the rest, residue, and remainder of my personal estate, and all the real estate of which I may die seised or possessed (excepting only the premises in which I may reside and be the owner of at the time of my death, and' which I have specifically devised in the fifth clause of this, my last will), in trust, as follows: (a) To collect the rents and income arising therefrom, and to pay out of the same the taxes, assessments, and charges, including repairs, in and about my real estate. (b) To pay to my said wife, Anna Louise King, the sum of twenty-five hundred dollars annually, in equal monthly payments of two hundred and eight $33/100$ dollars each, during the term of her natural life, or as long as she shall remain my widow, and the same shall cease in case she shall marry again; and in case, for any reason, the sum of twenty-five hundred dollars, with the payment of which I have charged the bequests to my son, Vincent C. King, Jr., in the second and third clauses of this, my will, should not be paid to my wife, then, and in case there should be a default in the payment of the same when due, I direct my said executors and trustees to pay to my said wife an additional sum of twenty-five hundred dollars per annum, in equal monthly payments of two hundred and eight $33/100$ dollars, during her natural life, or as long as she shall remain my widow and shall not marry again; it being my desire that my wife shall receive the sum of five thousand dollars per annum, payable in equal monthly payments, and the use of the house in which I may reside and be the owner of at the time of my death, and the use of the furniture which may belong to me, in the house in which I may reside at the time of my death, and my horses, carriages, etc., during her natural life, or as long as she shall remain my widow. And said bequests herein contained to my said wife shall be accepted and received by her in lieu of all dower of and in my said estate. (c) After the payment of the taxes, assessments, repairs, interest on mortgages, insurance, and all charges against my estate, and the payment of the income hereinbeforenamed to my wife, I direct my said executors and trustees to apply the balance of the net income of my estate to the payment and discharge of any and all incumbrances or liens of any kind upon my property; and when the same are fully paid and discharged, and my wife, as long as she shall live and not marry again, shall receive the said total payment of five thousand dollars per annum as hereinbefore directed, then the surplus of income, if any, shall be divided equally between my three daughters, Mrs. Virginia Hascall, Mrs. Mary Smith, and Mrs. Hattie Hilton, and my said son, Vincent C. King, Jr. (d) Upon the death of my said wife, or in the event of her marrying again, then the said rest, residue, and remainder of my real and personal estate shall be divided equally between my said three daughters and my said son, Vincent C. King, Jr., share and share alike. In case of the death of either of my said children leaving lawful issue her or him surviving, such issue to receive the portion to which the parent would have been entitled if living; if more than one issue, such part to be divided equally among them. Seventh. I direct my said executors and trustees, and the survivor of them, in their discretion, and as they shall deem for the best interests of my estate, to sell or lease my real estate (except the premises in which I may reside and be the owner of, at the time of my death, and which I have specifically devised in the fifth clause of this, my will) at such time and in such manner and upon such terms as they, in their judgment, shall deem for the interest of my said estate, and to invest the sum or sums realized therefrom in real estate, first mortgages upon improved real estate in the city of New York, United States bonds, or city securities. Eighth. I hereby nominate, constitute, and appoint my said son, Vincent C. King, Jr., and my wife, Anna Louise King, executor and executrix of this, my last will and testament, and trustees of the trusts hereby created. Lastly. I hereby revoke all former wills by me at any time made, and declare this only to be and contain my last will and testament.

"In witness whereof, I have hereunto set my hand and seal, the thirteenth day of January, in the year of our Lord, one thousand eight hundred and ninety-six.        Vincent C. King. [Seal.]"

It was sought by this action to have such a construction of the will as would result in a judgment declaring void the trust therein created, and permitting a partition of the testator's real estate and a distribution of his personal estate as though he had died intestate. At the trial, however, the will was held to be valid, and the complaint was dismissed, and it is from the judgment thereafter entered that this appeal is taken.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Peter B. Olney, for appellant.

William A. Boyd, for respondents.

O'BRIEN, J. There are two principal questions involved in this appeal. The first is as to whether the devises to Vincent C. King, the testator's son, of the factory property and the farm at Wilton, known as the "King Homestead," contained in the third and fourth paragraphs of the will, and which in form were "to my said son, his heirs and assigns, forever absolutely," are destroyed or cut down or affected by the sixth clause of the will, which devised and bequeathed to the executors, in trust for certain purposes, all the personal and real estate of which the testator might "die seised and possessed." The appellant contends that the language of the sixth clause creating a residuary estate was intended to include the parcels given to the son, and that the effect thereof was to give him a remainder in fee, instead of a fee absolute, or, in other words, that the devises, though in form absolute, were subject to the trust created by the sixth paragraph for the benefit of the widow during her life or until her remarriage, and that the title to the factory property and the farm would vest absolutely in the son only upon the death of the widow or her remarriage. The learned trial judge disposed of this contention adversely, holding that the factory property and the farm devised to the son were not intended by the testator to form a part of his residuary estate, and that the failure to include both in the exception contained in the sixth clause was probably due to inadvertence. We think the view thus taken was right, and that it is unnecessary to add to the reasons given for that conclusion.

The second principal question is as to whether subdivision C of the sixth paragraph of the will contains a direction to the executors and trustees to accumulate and apply a portion of the rents of the real estate, and of the income of the residuum of the personal property, to the payment of the principal of the mortgages on the real property, and, if it does, whether such a provision is valid. This subdivision, being an essential part of the general plan and scheme of the will, would, if void, necessarily affect—but to what extent we need not decide—not alone the entire paragraph 6 and all dispositions depending thereon, but also the bequest in the second paragraph of the capital and other property connected with the testator's business, and bequeathed to the son, and also the devises made in his favor by the third paragraph, which are subject to the payment of $2,500 per annum to the widow, unless we were to hold that the property so bequeathed and the lands so devised to the son were included in the residuary estate. But we have already said

we do not think they were so included. So, too, the fifth clause, making provision for the widow in lieu of dower, might not be effective if the direction in the sixth paragraph in regard to the payment of mortgages could not be carried out. It is unnecessary for us to determine these questions, which would only arise in the event that subdivision C of the sixth paragraph should be held invalid.

The question as to whether a trust can be created for the accumulation of rents or income for the purpose of satisfying mortgages or charges upon real estate is not a new one. It was presented and disposed of in the recent decision by this court of Becker v. Becker, 13 App. Div. 342, 43 N. Y. Supp. 17, in which all the cases cited by the appellants were considered, and some of them referred to; and it was therein held, as correctly stated in the syllabus, that the trust to apply the rents, issues, and profits to the payment of the mortgage upon part of the trust real estate was valid, under subdivision 2 of section 55 of the Revised Statutes (1 Rev. St. p. 728), providing that an express trust may be created "to sell, mortgage or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon." The Second department, in a later decision (In re Rogers, 22 App. Div. 429, 48 N. Y. Supp. 175), took seemingly a contrary view. The question, however, for the present, so far as this court is concerned, must be regarded as settled by the case of Becker v. Becker, supra. We are inclined, however, to think that in the case at bar the question is not directly presented, and that, considering the language used with a view of carrying out the intention of the testator, there is no provision for accumulation. Subdivision C provides:

"After the payment of the taxes, assessments, repairs, interest on mortgages, insurance, and all charges against my estate, and the payment of the income hereinbefore named to my wife, I direct my said executors and trustees to apply the balance of the net income of my estate to the payment and discharge of any and all incumbrances or liens of any kind upon my property."

This we do not consider as necessarily a provision for accumulation. That a testator can provide for the payment of his debts has never been questioned; and yet what more has the testator here done than to make provision for the application of the balance of the net income to the payment of his debts and obligations? This purpose can be accomplished without the actual accumulation of the rents or income. The direction is not to accumulate these rents, and with the accumulations to pay off mortgages, but to apply the net income directly, as soon as received, to the payment and discharge of the incumbrances. If this is done, there can never be an accumulation; and we have no right to assume that it could not and will not be done. It is true that the effect of this application of net income will be to enhance the value of the real estate by reducing the charges thereon; but it is lawful to use income for that purpose, provided it can be done without accumulation. The mere act of applying income in that manner does not necessarily provide for an accumulation.

It is conceded in all the cases that a trust to pay off mortgages on land, out of the rents, issues, and profits, was a valid express

trust, under the second subdivision of section 5 of the statute of uses and trusts.    It has been said, however, that this is a provision for alienation, and that the intent of the statute was merely to permit of the leasing for a given term, with payment of the whole rent down at once and in advance.    Hawley v. James, 16 Wend. 275; In re Fisher's Estate (Surr.) 25 N. Y. Supp. 79.    But it will be perceived that, if the appellant's argument be sound, this, too, would be invalid, because the payment of mortgages out of the lump sum would also be an accumulation; that is, if the test of an accumulation is the swelling of the principal of the estate, as, indeed, the appellant claims.    It is evident that the section of the Revised Statutes as to trusts and the section as to accumulations involve no such conclusion.    The payment of mortgages out of income is not necessarily an accumulation merely because it makes the land more valuable. If that were so, it is clear that the provision as to accumulation wipes out all trusts to apply the rents, issues, and profits of land to the payment of mortgages thereon.    That cannot be.    The two sections must be read together, and, when so read, it is apparent that the utilization of the rents, issues, and profits of real estate to the payment of mortgages thereupon is not an accumulation of income, in the sense in which the latter phrase is used in the other section of the Revised Statutes.    The section of the will in question makes no provision for an accumulation.    It certainly makes none directly, and there is neither evidence nor just inference that it will ever have that practical effect.    And even if the net income, as it accrues, cannot be immediately and practically applied to the payment of mortgages, it is not an accumulation of such income to apply it by earmarking it and setting it apart until a sufficient sum is realized to compel the mortgagee to accept his principal and extinguish the mortgage.    This is not, in a just sense, accumulating the income.    It is, in reality, applying it as it comes in.    It remains in the hands of the executor to the use of the mortgagee. Equitably, it belongs to the mortgagee.    He may receive it if he will.    It is not an accumulation for his benefit.    It is retained and set apart as a proportionate part of his principal.    The net income, as it accrues, is not accumulated, but applied at once.

If we were right, in Becker v. Becker, in holding that the trust to apply the rents, issues, and profits of real estate to the payment of charges thereon was a valid trust, and that the statute did not restrict the character of the lease nor the nature of the covenants with regard to the payment of the rent, then, whether such rent be paid in a lump sum or in installments, it is lawful to apply either such lump sum or installments to the payment of mortgages upon such real estate, and neither the utilization of the entire lump sum at once, nor of the installments at once as they come in, effects an accumulation, within the meaning of that term as used in the other section of the statute.    It will thus be seen that we have concluded that subdivision C of paragraph 6 of the will does not provide for an accumulation of income contrary to the Revised Statutes.

Equally untenable is the contention that the seventh paragraph of the will is invalid, because it attempts to create an unlawful

trust, in that the beneficiaries are not named, that the term of the trust is not definite, and that the object is not stated. In this argument the appellant loses sight of what was really intended by the seventh paragraph. The testator had made a disposition of his property, and, in order to carry it out, it was necessary that certain authority and power should be conferred upon his executors and trustees. He undoubtedly sought by that clause to confer such power upon them, and did not intend thereby to create any trust in conflict with the prior provisions of his will, or to do more than give them authority, as he states, "to sell or lease my real estate * * * at such time and in such manner and upon such terms as they in their judgment shall deem for the interest of my said estate, and to invest the sum or sums realized therefrom in real-estate first mortgages upon improved real estate in the city of New York, United States bonds, or city securities." With respect to the premises occupied by the testator at the time of his death, which are admitted to have been No. 49 West Eighty-Eighth street, and which by the fifth clause of the will were given to the widow, it is evident that, as this devise was entirely apart from the provision made for her by the sixth clause, and was expressly excepted from the operation thereof, it is to be treated as a separate and distinct piece of property, and that, in dealing with it, the trustees are to pay to the widow only the net rent of the premises, and that the taxes, assessments, and charges, including repairs upon the house, are to be deducted from the gross rent, and are not to be paid out of the income derived from the property bequeathed and devised in the sixth clause of the will.

The other questions presented, as to what property, in the event of the personal estate being insufficient, shall be applicable to the payment of the claims of creditors, and as to the propriety of the payment of the note of $9,750 to the defendant executrix, should be relegated to the surrogate's court, where, upon the accounting or in other proceedings, they can be more properly disposed of than in an action such as this, which was brought for the construction of the will and the partition of the real estate.

The judgment should be affirmed, with costs. All concur, except VAN BRUNT, P. J., dissenting.

VAN BRUNT, P. J. I dissent. There was a clear violation of the statute against accumulation of rents beyond a minority.