In the Matter of the Accounting of VINCENT C. KING, JR., et al., as Trustees under the Will of VINCENT C. KING, Deceased, Appellants.

HATTIE K. HILTON et al., Respondents.

WILL — TESTAMENTARY TRUST — CONSTRUCTION. Where a testator, who provided in other clauses of his will that his widow should have an annual income of $5,000 during her natural life or while she remained his widow, devised and bequeathed to his executors, by the 5th clause of his will, the house in which he resided, together with the contents thereof, in trust, to collect the rent therefrom and pay the same to his widow during her natural life or widowhood, or, if the widow desired to occupy the premises, that she should have the free use and enjoyment of the house and contents, or, if she did not desire to occupy the same and consented that the premises be sold, the executors were authorized and empowered to sell the same and invest the proceeds thereof and pay the income therefrom to his widow in addition to the income otherwise provided for; and, in the 6th clause of the will, testator devised and bequeathed the residue and remainder of his real and personal estate to his executors in trust (a) to collect the rents and income thereof and pay therefrom the taxes, assessments and charges, including repairs in and about his real estate; (b) to pay to the widow certain sums per annum, so that with such payments, alone, or with others provided for elsewhere, the widow shall receive

the sum of $5,000 per annum and have the use of testator's house and contents; (c) after the payment of taxes, assessments, repairs, interest on mortgages (one of which was on the house given to the widow for life) and the annuity to the widow, to apply the balance of the income to the payment of incumbrances and liens upon the real estate (a provision heretofore held invalid as an accumulation under the Revised Statutes), and when the same should be fully paid, to divide the surplus income between his four children share and share alike — it is apparent that testator intended that his widow should have a net income of $5,000 per annum, in addition to the use of testator's house, or the rents and income therefrom, and that he never intended that the income of the widow should be burdened with, or decreased by, the payment of taxes, interest or any of the expenses of maintaining testator's house: and, therefore, the 5th and 6th clauses of the will should be read together, and so read, the trustees are authorized and empowered to pay all charges and expenses upon testator's house from the surplus income of the residuary estate before dividing the same among those entitled thereto.

*Matter of King,* 102 App. Div. 614, reversed.

(Argued November 27, 1905; decided January 23, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 27, 1905, which affirmed a decree of the New York County Surrogate's Court confirming the report of a referee appointed to pass upon the account of the trustees herein.

The will reads as follows, viz.:

" In the Name of God, Amen.

" I, Vincent C. King, of the City and County of New York, in the State of New York, being of sound mind and memory, and considering the uncertainty of life, do make, publish and declare this to be my last will and testament.

" *First.* I hereby direct all my just and lawful debts to be paid.

" *Second.* I give and bequeath to my son, Vincent C. King, Junior, all my right, title and interest, being one full equal undivided half of the capital and other property in the business now carried on by me with my brother, C. Volney King, under the firm name and style of V. C. & C. V. King.

" *Third.* I give, devise and bequeath to my said son, Vincent C. King, Junior, all my right, title and interest, being

one full equal undivided half of the property known as the 'Factory property,' situate on the southeast corner of Horatio and West streets, in the City of New York, subject to my liability upon a mortgage of twenty-five thousand dollars now on the same, being one-half thereof — to wit, the sum of twelve thousand five hundred dollars — to have and to hold the same unto him, my said son, his heirs and assigns forever absolutely.

" The said bequests to my son are made subject to the payment of the sum of twenty-five hundred dollars per annum, in equal monthly payments of two hundred and eight 33/100 dollars each, to my wife, Anna Louise King, during the term of her natural life, or as long as she shall remain my widow, and the same shall cease in case she shall marry again. As soon as my real estate, hereinafter mentioned, is relieved from mortgages, and there can be realized from my estate a clear net income of five thousand dollars per annum to be paid to my wife, then my son shall be relieved from the payment of said sum of two thousand five hundred dollars.

" *Fourth.* I give, devise and bequeath to my said son, Vincent C. King, Junior, my farm at Wilton, Saratoga County, in the State of New York, consisting of about two hundred and thirty acres, known as 'The King Homestead,' with all the stock and implements of husbandry belonging to me, to have and to hold the same unto him, my said son, his heirs and assigns forever absolutely.

" *Fifth.* I give, devise and bequeath to my executors and trustees, hereinafter named, and the survivors of them, the premises in which I may reside and be the owner of at the time of my death ; also the furniture and everything useful and ornamental which belongs to me, and which may be in the house in which I reside at the time of my death ; also the horses and carriages, etc., which may belong to me at the time of my death. In trust, to collect the rent arising therefrom and to pay the same to my wife during her natural life, or as long as she shall remain my widow ; but my wife, in case she desires, may occupy the said house without payment of rent, and may have the free use and enjoyment of said furniture

which may belong to me at the time of my death, and said horses, carriages, etc., during her natural life, or as long as she shall remain my widow. In case my wife does not desire to occupy the said house and remains my widow, and consents in writing that the same may be sold, I hereby authorize and empower my said executors and trustees and the survivor of them to sell the said premises and to invest the amount realized from the sale thereof in real or personal property and pay the income arising therefrom to my wife during her natural life, or as long as she shall remain my widow, and at her death, or in case she shall marry again, the said premises, or the amount realized in case the same shall be sold, as hereinbefore provided, shall become part of my residuary estate.

"*Sixth.* I give, devise and bequeath to my executors and trustees hereinafter named and the survivor of them all the rest, residue and remainder of my personal estate, and all the estate of which I may die seized or possessed (excepting only the premises in which I may reside and be the owner of at the time of my death, and which I have specifically devised in the fifth clause of this my will) in trust, as follows:

"(a) To collect the rent and income arising therefrom and pay out of the same the taxes, assessments and charges including repairs in and about my real estate.

"(b) To pay to my said wife Anna Louise King the sum of twenty-five hundred dollars annually in equal monthly payments of two hundred and eight 33/100 dollars each during the term of her natural life or as long as she shall remain my widow and the same shall cease in case she shall marry again, and in case for any reason the sum of twenty-five hundred dollars, with the payment of which I have charged the bequest to my son Vincent C. King, Junior, in the second and third clauses of this my will, should not be paid to my wife, then and in case there should be a default in the payment of the same when due, I direct my said executors and trustees to pay to my said wife an additional sum of twenty-five hundred dollars per annum in equal monthly payments of two hundred and eight 33/100 dollars during her

natural life or as long as she shall remain my widow and shall not marry again. It being my desire that my wife shall receive the sum of five thousand dollars per annum payable in equal monthly payments and the use of the house in which I may reside and be the owner of at the time of my death and the use of the furniture which may belong to me in the house in which I may reside at the time of my death and my horses, carriages, etc., during her natural life or as long as she shall remain my widow.

" And the said bequests herein contained to my said wife shall be accepted and received by her in lieu of all dower of and in my said estate. .

" (c) After the payment of the taxes, assessments, repairs, interest on mortgages, insurance and all charges against my estate, and the payment of the income hereinbefore named to my wife, I direct my said executors and trustees to apply the balance of the net income of my estate to the payment and discharge of any and all incumbrances or liens of any kind upon my property, and when the same are fully paid and discharged, and my wife, as long as she shall live and not marry again, shall receive the said total payment of five thousand dollars per annum as hereinbefore directed, then the surplus of income, if any, shall be divided equally between my three daughters Mrs. Virginia Hascall, Mrs. Mary Smith and Mrs. Hattie Hilton, and my said son Vincent C. King, Junior.

" (d) Upon the death of my said wife, or in the event of her marrying again, then the said rest, residue and remainder of my real and personal estate shall be divided equally between my said three daughters and my said son Vincent C. King, Jr., share and share alike. In case of the death of either of my said children leaving lawful issue her or him surviving, such issue to receive the portion to which the parent would have been entitled if living. If more than one issue, such part to be divided equally among them.

" *Seventh.* I direct my said executors and trustees, and the survivor of them, in their discretion, and as they shall deem for the best interest of my estate, to sell or lease my real

estate (except the premises in which I may reside and be the owner of at the time of my death, and which I have specifically devised in the fifth clause of this my will) at such time and in such manner, and upon such terms, as they in their judgment shall deem for the interest of my said estate, and to invest the sum or sums realized therefrom in real estate, first mortgages upon improved real estate in the City of New York, United States bonds or city securities.

"*Eighth.* I hereby nominate, constitute and appoint my said son Vincent C. King, Jr., and my wife Anna Louise King, Executor and Executrix of this my last will and testament, and trustees of the trusts hereby created.

" Lastly. I hereby revoke all former wills by me at any time made, and declare this only to be and contain my last will and testament.

" In witness whereof, I have hereunto set my hand and seal the thirteenth day of January, in the year of our Lord one thousand eight hundred and ninety-six."

*William A. Boyd* for appellants. The taxes, interest on mortgage, insurance and repairs on 49 West Eighty-eighth street were properly paid by the trustees out of the rents collected from the residuary estate by the express terms of the will. (*Matter of Albertson*, 113 N. Y. 439 ; *Clarke* v. *Clarke*, 145 N. Y. 481; *Matter of Tracy*, 179 N. Y. 511; *Moffett* v. *Elmendorf*, 152 N. Y. 487.) In the case of *Hascall* v. *King*, no mention of the taxes, interest on mortgage or repairs of the premises No. 49 West Eighty-eighth street was made either in the pleadings on the trial of the case or on the argument of the appeal, and the Special Term, Appellate Division, Court of Appeals or referee have not adjudicated upon the question raised on this appeal, and upon the merits of the question these appellants have never been heard. (*Hascall* v. *King*, 28 App. Div. 280; 162 N. Y. 134.)

*Franklin Bartlett* for Hattie K. Hilton, respondent. The Court of Appeals has already virtually held that the charges

for taxes, ·mortgage interest, insurance and repairs on the house occupied by this widow should be paid by her, and not by the residuary estate. (*Hascall* v. *King*, 28 App. Div. 280; 162 N. Y. 134.) Even though the view expressed by the Appellate Division and its subsequent approval by this court be regarded as *obiter dicta* and as not absolutely binding on this court, the same decision must be reached on principle and on authority, and these items of expenditure must be charged against the trustees. (*Matter of Albertson*, 113 N. Y. 435; *Clarke* v. *Clarke*, 145 N. Y. 476; *Matter of Tracy*, 179 N. Y. 501.)

*Nathaniel S. Smith* and *James F. McNaboe* for Mamie K. Smith, respondent. This court has approved the view that the charges for repairs, taxes, interest, insurance, etc., on premises No. 49 West Eighty-eighth street, occupied by the widow, should not be paid out of the income of the residuary estate. (*Hascall* v. *King*, 162 N. Y. 134.) As between the life tenant and the remainderman, the life tenant must pay all charges for the maintenance of the real property used by him unless the will specifically provides to the contrary, and there being no contrary direction in this will, it follows that the widow, this life tenant, must pay all such charges as found by the referee. (4 Kent's Comm. 24; *Matter of Albertson*, 113 N. Y. 434; *Matter of Tracy*, 179 N. Y. 501.)

BARTLETT, J. The trustees, Vincent C. King, Jr., and Anna Louise King, appeal from the order of the Appellate Division affirming the decree of the Surrogate's Court of the county of New York, charging them with upwards of seven thousand dollars for expenses incident to the care and preservation of property, No. 49 West Eighty-eighth street, in the city of New York, and of other property bequeathed in the fifth subdivision of the will; also, for incidental damage to estate.

A proper understanding of the questions presented by this appeal requires a careful consideration of the scheme of the will. The testator was a man of wealth and a well-known

merchant in the city of New York: He left him surviving
a widow and four children, three daughters and a son, all
of whom were of full age. The testator was twice married.
There was no issue of the second marriage. The second sub-
division of the will gives to the son, Vincent C. King, Jr., the
testator's undivided half interest in the capital and other prop-
erty in his business. The third subdivision gives to the son
the testator's half interest in the property known as the "Fac-
tory property," situate in the city of New York, subject to
testator's liability on a mortgage for twenty-five thousand dol-
lars on the property; also subject to the payment of twenty-
five hundred dollars per annum, in equal monthly payments,
to the widow during the term of her natural life, or until her
re-marriage. The son was to be freed from this annual pay-
ment as soon as the real estate was relieved from mortgages,
so that the net income of five thousand dollars to be paid the
widow could be realized from the general estate. The fourth
subdivision devises and bequeaths to the son the testator's
farm of two hundred and thirty acres at Wilton, Saratoga
county, in this state, known as "The King Homestead," with
all its stock and implements of husbandry, etc. The fifth
subdivision devised and bequeathed to the executors and trus-
tees the premises in which the testator resided at the time of
his death, which proved to be the house and lot No. 49 West
Eighty-eighth street, in the city of New York; also the horses,
carriages, etc., which belonged to testator at the time of his
death. "In trust, to collect the rent arising therefrom, and
to pay the same to my wife during her natural life, or as long
as she shall remain my widow; but my wife, in case she
desires, may occupy the said house without payment of rent
and may have the free use and enjoyment of said furniture
which may belong to me at the time of my death, and said
horses, carriages, etc., during her natural life, or as long as she
shall remain my widow." Then follows a provision that in
case the widow elects not to live in the house and enjoy the
personal property named, the same may be sold and the
amount realized from the sale thereof to be invested in real or

personal property and the income paid to the widow. The sixth subdivision devises and bequeaths to the executors and trustees all the rest, residue and remainder of the personal estate, and all the real estate, except that which was specifically devised in the fifth subdivision, in trust for certain purposes as follows: (a) "To collect the rent and income arising therefrom and to pay out of the same the taxes, assessments and charges, including repairs *in and about my real estate;*" (b) provides for the payment to the widow of twenty-five hundred dollars a year so long as his son, Vincent C. King, Jr., paid a like amount, as provided in the third subdivision, and in case of his default, to pay to the widow the entire sum of five thousand dollars. The testator at this point uses this significant language: "It being my desire that my wife shall receive the sum of five thousand dollars per annum, payable in equal monthly payments, and the use of the house in which I may reside and be the owner of at the time of my death, and the use of the furniture which may belong to me in the house in which I may reside at the time of my death, and my horses, carriages, etc., during her natural life, or as long as she shall remain my widow." (c) After the payment of the taxes, assessments, repairs, *interest on mortgages,* insurance and all charges against his estate, and the payment of the income to the widow, the testator directed the application of any balance of income to the payment and discharge of any and all incumbrances or liens of any kind upon his property, and when this was done if a balance remained of surplus income it should be equally divided among his four children; (d) contains provisions not material on this appeal. Reference need not be made to the other provisions of the will at this time. These various provisions for the widow are in lieu of dower.

The will was executed on the 13th of January, 1896, and the testator died on the 2nd of July following, residing with his wife at that time in the premises 49 West Eighty-eighth street, in the city of New York. The widow elected not to occupy the premises 49 West Eighty-eighth street under the

provisions of the will and, thereupon, the executors and trustees placed the real property in the hands of several different agents for sale.

In December, 1896, Virginia K. Hascall, one of the daughters of the testator, began an action against the executors and trustees of her father's will, joining therein as defendants her brother and two sisters, which had for its object the construction of certain portions of the will of testator and for the partition of the real estate. The single question litigated in that case was the validity of so much of the sixth subdivision of the will marked (c), which directed the executors and trustees to apply the balance of the net income of the estate, after the payment of repairs, interest, insurance, etc., to the payment and discharge of any and all incumbrances or liens of any kind upon the same. The Special Term sustained the validity of the clause, but dismissed the complaint; the Appellate Division affirmed the judgment ; the Court of Appeals decided (162 N. Y. 134) that the application of part of the income of the trust of the residuary estate to the payment of mortgages and other liens, thereby increasing the capital of the estate by decreasing the burden thereof, constitututes an unlawful accumulation within the meaning of the Revised Statutes (1 R. S. 726, §§ 37, 38), prohibiting the accumulation of rents and profits of real estate, except during the minority and for the sole benefit of minors, and is invalid notwithstanding such accumulation takes the form of an extinguishment of indebtedness, and is limited to the surplus income remaining after the payment of an annuity and restricted to the lifetime of the annuitant. It was further held that the primary object of a testamentary trust being to provide an annuity for testator's wife, and being separable from a secondary object and ulterior provision for the payment of mortgages out of any income remaining after paying such annuity, is valid and will be sustained, although the secondary provision be void. The judgment dismissing the complaint was modified in accordance with this decision and as so modified affirmed. In brief, the direction to pay and discharge incumbrances or liens out of a

balance of income was held an unlawful accumulation, but the direction to pay an annuity to the widow was permitted to stand. No other question was considered or decided by the court.

The following language is found in the opinion of the learned Appellate Division (*Hascall* v. *King*, 28 App. Div. 291) : " With respect to the premises occupied by the testator at the time of his death, which are admitted to have been No. 49 West Eighty-eighth street, and which by the fifth clause of the will were given to the widow, it is evident that, as the devise was entirely apart from the provision made for her by the sixth clause and was expressly excepted from the operation thereof, it is to be treated as a separate and distinct piece of property, and that in dealing with it the trustees are to pay to the widow only the net rent of the premises and that the taxes, assessments and charges, including repairs upon the house, are to be deducted from the gross rent and are not to be paid out of the income derived from the property bequeathed and devised in the sixth clause of the will." The following sentence appears in the opinion of this court : " In all other respects we agree with the views expressed in the opinion written by the Appellate Division." (162 N. Y. p. 153.) On these two expressions of opinion, which were purely *obiter dicta*, the respondents insist that the question presented by the present appeal has been decided in their favor. It is a sufficient answer to this contention to say that what is decided by the court is settled by its order and judgment and not by its opinion. The Supreme Court, at Special Term and Appellate Division, sustained the validity of the clause providing for the payment of incumbrances and liens out of income, but dismissed the complaint as to plaintiff's claim that the will was void and the real estate should be partitioned. This court held the said provision to be void as an unlawful accumulation, but sustained provisions for annuity to the widow. Motions were made in the Special Term, Appellate Division and this court after final judgment to amend the proceedings so as to make the *obiter dicta* of the

Appellate Division a part of the decision. These motions were denied. Judge ANDREWS in an application at Special Term handed down an opinion, in which he said : " The judgment of the Special Term dismissed the complaint and construed the will in certain particulars, but not in regard to the premises 49 West 88th street. That judgment was affirmed by the Appellate Division, and according to the opinion delivered in the Court of Appeals was affirmed there, except in regard to the accumulation."

In the present proceedings the surrogate appointed a referee to inquire into the necessary jurisdictional facts, to examine the account and objections, to hear and determine the questions arising upon the settlement of the account, which the surrogate had the power to determine and report to the court. The referee in his opinion uses this language : " The main contention is over the true meaning of the fifth paragraph of the will. That meaning was not determined by any adjudication in the proper sense of the word in *Hascall* v. *King* (28 App. Div. 280 ; 162 N. Y. 134)." After commenting upon the weight to be given to *obiter* remarks of the court, generally, etc., he further said : " I do not think that it would be proper for me to reconsider upon the merits the question which has been thus deliberately, although, *obiter*, considered and passed upon by the higher courts, and, therefore, I must hold the expenditures made of the residuary property on behalf of the widow's property to have been improper." It thus appears that the single question presented by this appeal, as to whether the trustees were authorized to pay out of the income of the trust created by the sixth subdivision of the will the taxes, interest, assessments and charges, including repairs in and about 49 West Eighty-eighth street, was not considered by the referee, and the judgment entered upon his report was affirmed by the Appellate Division without opinion.

The testamentary scheme of the testator is clear and exceedingly simple. At the time the will was executed the testator's three daughters were married and settled in life, and he

was living with a second wife by whom he had no issue. He evidently determined that his only son should be his successor in the business interests that he controlled, and he provides for this abundantly in the second, third and fourth subdivisions of the will where he vests him with the title of the real estate connected with his business, including the valuable farm in Saratoga county. The next object of his bounty was the widow, and he provides for her in two ways, to wit: First, by the fifth subdivision of the will, wherein he creates an express trust in his executors and trustees for her benefit, making her the beneficiary of certain real and personal property, vesting in her the right to reside upon the real estate so held in trust free of rent, using horses, carriages, furniture, etc., without charge; or at her election to lease the same, the rent to be paid to her by trustees; or to have the real estate and personal property sold and the proceeds invested in other real estate or personal property, and she to receive the income thereof, and at the termination of the trust the entire property, real and personal, to fall into the residuary estate. The second provision contemplated a sufficient income for the widow should she elect to reside upon the premises in question, or go elsewhere, and it was fixed at five thousand dollars a year. One-half of this sum was to be paid from the income of the residuary estate and the other half by the son, Vincent C. King, Jr. It was, however, provided that if the son defaulted in his payment the whole amount should be paid from the income by the trustees.

As before stated, soon after the widow elected not to reside upon the premises 49 West Eighty-eighth street, and the same were placed in the hands of real estate agents for sale, the action of *Hascall* v. *King* was begun and a *lis pendens* filed. The natural result of the filing of this *lis pendens* was to prevent the sale or rental of the property until it was canceled of record. The *lis pendens* was not discharged until the 25th of June, 1900, the action having been begun December 9th, 1896, three years and a half prior to that time.

Reading the fifth subdivision by itself we find that the tes-

tator employs no language indicating his intention that the widow should in case of leasing receive only the net profits, nor does he provide in any way for the payment of taxes, assessments, repairs and interest upon the twenty-five thousand dollar mortgage on this real estate. On the contrary, he directs that the widow may occupy the house "without payment of rent," and if premises are rented the trustees are to collect the rent "and pay the same to my wife." The testator's general scheme for the widow in this connection presented to his mind evidently two contingencies, to wit: That if she decided to reside upon the premises and use the personal property she could do so without charge, and he arranged for a fixed income of five thousand dollars a year. If she preferred to have the property sold she was entitled to receive the income of the sum realized on such sale when re-invested. This, with the five thousand dollars income, would then constitute her interest under the will. The income of the re-invested fund on sale of real estate and personal property stood in lieu of her occupying the real estate, rent free, and using the personal property without charge. It is quite inconceivable that the testator intended that if she occupied the premises she should pay out of her annual income of five thousand dollars the interest on the twenty-five thousand dollar mortgage and the various disbursements for taxes, assessments, repairs, etc. If the widow had been compelled to do this there would have remained to her a sum absolutely insufficient to live upon in the mode of life contemplated by the testator.

It is clear that in order to discover the real intention of the testator the fifth and sixth subdivisions of the will must be read together. The sixth subdivision opens with these words : "I give, devise and bequeath to my executors and trustees hereinafter named and the survivor of them all the rest, residue and remainder of my personal estate and all the estate of which I may die seized or possessed (except only the premises in which I may reside and be the owner of at the time of my death and which I have specifically devised in the fifth clause of this my will) in trust as follows: (a) To collect the

rent and income arising therefrom and pay out of the same the taxes, assessments, charges, including repairs *in and about my real estate.*" These closing words are general and embrace all the real estate. It is argued that this cannot be the proper construction, as he expressly excludes the real estate devised in trust in the fifth subdivision from this trust. When the intention of the testator is made clear this exception is quite consistent with the claim that he here provides for the payment of those charges on all his real estate, including that embraced within the express trust of the fifth subdivision, where, as already pointed out, he made no provision for meeting these disbursements. In turning to clause (c) of the sixth subdivision we have a confirmation of this construction. That clause provides as follows : " After the payment of the taxes, assessments, repairs, *interest on mortgages*, insurance and all charges against *my estate*, I direct," etc. It will be noted that the testator speaks of interest on mortgages, using the plural. It is in evidence that at that time there were but two mortgages on the real estate embraced within the fifth and sixth subdivisions of the will, to wit, twenty-five thousand dollars on 49 West Eighty-eighth street and fifteen thousand dollars on 131 East Fifteenth street. The use of the plural clearly shows that he had in mind both of these mortgages when drawing clause (c) of subdivision sixth.

The reading of the fifth and sixth subdivisions of the will together is essential in order to sustain the intention of the testator as disclosed by his testamentary scheme. As the testator under the fifth subdivision allowed his widow the· free use of the real estate and the personal property employed in and about it, or, if leased, the rent when collected, or the income of the proceeds of the sale of real and personal property without incumbrance or charge of any kind, she could not enjoy that degree of financial independence which it is evident he intended to confer upon her, unless resort is had to the sixth subdivision. When the fifth and sixth subdivisions are read together, the intention of the testator is clear and all the provisions of the will are harmonized.

The position of the respondents is that the fifth subdivision of the will must be read by itself; that the widow, by the terms of the express trust, became a mere life tenant; that under the general rule the life tenant must pay the taxes, interest, insurance, ordinary repairs, etc. The existence of this general rule is undoubted, but assuming that the widow became a life tenant under the fifth subdivision, the provisions of the will as already commented upon release her from the burden ordinarily imposed by the rule.

The testator's intention in drawing the fifth and sixth subdivisions may be thus summed up: I do not put 49 West Eighty-eighth street and personal property connected with it in the trust of the residuary estate, as it forms no part of that estate, until my widow dies or marries. During the term indicated she either uses the property, rent free, or receives the rent as collected, or on sale of property the income of the proceeds when re-invested. In order to secure all this to my widow I provide for the payment of mortgage interest and all charges on 49 West Eighty-eighth street out of the income of the residuary estate.

The exception was well taken by the trustees to the ninth conclusion of law in the report of the referee, whereby they were charged $7,213.80, by reason of the payment of taxes, interest on mortgage, insurance, repairs, etc., on 49 West Eighty-eighth street, amounting to $6,407.78; and also for the balance consisting of $759.55, being made up of interest paid as a penalty on taxes, the payment of which had been deferred by reason of the alleged improper use by the trustees of the income of the residuary estate in paying charges, etc., on 49 West Eighty-eighth street, thereby leaving no funds with which to pay taxes.

As the trustees are the only appellants from the decree settling the account below, and as the amount of $7,213.80, with which the trustees have been improperly charged seems to be unchallenged by any of the parties in interest, there is, apparently, no necessity for re-stating the account.

The order of the Appellate Division should, therefore, be

reversed and the proceedings remitted to the Surrogate's Court to conform the trustees' account and the decree entered thereon to the views expressed herein, with costs to the appellant trustees in all the courts to be paid out of the estate.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN, JJ. (and GRAY and WERNER, JJ., in result), concur.

Order reversed, etc.